## No. 26834

**J. O. Lewis, District Attorney and Special Prosecutor v. The Honorable Lawrence Thulemeyer, Judge of the Sixteenth Judicial District, and the District Court of the Sixteenth Judicial District**

(538 P.2d 441)

Decided July 14, 1975.

J. O. Lewis, District Attorney.

Lawrence Thulemeyer, Judge, pro se.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

This is an original proceeding in which the petitioner, the special prosecutor representing the People, seeks relief in the nature of mandamus. The Honorable Lawrence Thulemeyer, District Judge, and the District Court of the Sixteenth Judicial District are the respondents but referred to hereinafter as "respondent." We issued a rule to show cause and now make the rule absolute. Robert Andrew Lucero, II, the defendant, is presently charged by information with first-degree murder pursuant to section 18-3-102, C.R.S. 1973. To this charge, the defendant has entered a plea of not guilty by reason of insanity. Section 16-8-103, C.R.S. 1973.

The court ordered the defendant to submit to a sanity examination. Section 16-8-105, C.R.S. 1973. An examination was conducted pursuant to section 16-8-106. A written report of the examination was prepared in triplicate by the examining physician and delivered to the clerk of the court. At this point, upon motion of the defendant, the court excised from the report certain allegedly incriminating statements made by the defendant to the examining physician. As a result, the special prosecutor was not furnished "a copy of the report" in its entirety (as was counsel for the defendant), contrary to the language of section 16-8-106(4) which states:

"A written report of the examination shall be prepared in triplicate and delivered to the clerk of the court which ordered it. *The clerk shall furnish a copy of the report both to the prosecuting attorney and the counsel for the defendant.*" (Emphasis added.)

In response to the rule to show cause, the respondent answered:

"Respondent deleted parts of pages 2 and 3 from the Psychiatric Examination report of Dr. Robert W. Rasor in that respondent believed the parts deleted were self-incriminating.

"C.R.S. 1973, 16-8-106, 'Examinations and Report, (2) The defendant shall have the privilege against self-incrimination during the course of an examination under this section.'"

The general assembly provided the solution to the problem raised by the respondent. The legislative scheme carefully avoided the constitutional proscriptions against self-incrimination. Section 16-8-106 provides:

"(3) To aid in forming an opinion as to the mental condition of the defendant, it is permissible in the course of an examination under this section to use *confessions and admissions* of the defendant and any other

evidence of the circumstances surrounding the commission of the offense, as well as the medical and social history of the defendant in questioning the defendant. . . . In any trial or hearing *on the issue of defendant's sanity*, eligibility for release, or competency to proceed, the physicians and other personnel conducting the examination may testify to the results of any such procedures and *the statements and reactions of the defendant*, insofar as the same entered into the formation of their opinions as to the mental condition of the defendant." (Emphasis added.)

The general assembly limited the use of "confessions and admissions" and "statements and reactions" to trials or hearings where *the issue of defendant's sanity* is the issue. This prohibits its use as evidence by the People in a trial on *the issue of guilt.*

The law also provides that the issues raised by the plea of not guilty by reason of insanity *"shall be tried separately to different juries,"* and that the sanity of the defendant shall be tried first. Section 16-8-104, C.R.S. 1973 (Emphasis added); *People v. Kernanen*, 178 Colo. 234, 497 P.2d 8 (1972); *Lewis v. People*, 174 Colo. 334, 483 P.2d 949 (1971).

In this connection it should be noted that section 16-8-105 recognizes that where the sanity of the defendant is placed in issue, the burden of proof is on the People to prove his sanity beyond a reasonable doubt. Subsection (2) states it thusly:

"Every person is presumed to be sane, but once any evidence of insanity is introduced, then the People have the burden of proving sanity beyond a reasonable doubt."

Further recognition of the constitutional rights of the defendant relative to self-incrimination appears in section 16-8-107(1), which provides:

"Except as provided in this subsection (1), *no evidence acquired directly or indirectly for the first time from a communication derived from the defendant's mental processes during the course of a court-ordered examination under section 16-8-106 is admissible against the defendant on the issues raised by a plea of not guilty*, if the defendant is put to trial on those issues, except to rebut evidence of his mental condition introduced by the defendant to show incapacity to form a specific intent; and, in such case, that evidence may be considered by the trier of fact only as bearing upon the question of capacity to form a specific intent, and the jury, at the request of either party, shall be so instructed. If the defendant testifies in his own behalf upon the trial of the issues raised by the plea of not guilty, the provisions of this section shall not bar any evidence used to impeach or rebut the defendant's testimony." (Emphasis added.)

The bifurcated trial was designed to eliminate many constitutional challenges where the issues of *insanity* and *guilt* were resolved in the unitary trial. One was that a unitary trial procedure effectively forced the defendant to jeopardize the presumption of innocence inherent in our system of justice and guaranteed by the fifth amendment. The likelihood

of "coercing" self-incrimination was increased when the defendant was subjected to a mandatory psychiatric examination. Nevertheless, where the confessions and admissions of the defendant have been weighed by the examining physician in evaluating the defendant's sanity, fairness requires that the prosecutor have the same information as the defense attorney.

When the sanity issue is a separate proceeding, as it is in Colorado, before a jury that cannot consider the issue of guilt in the event the defendant is found sane and where the admissions cannot be used to establish guilt, there is no self-incrimination within the contemplation of the constitutional provisions. By definition, self-incrimination contemplates the use of the confession or admission to aid in establishing the guilt of the defendant. The use of the confessions or admissions of the defendant in the decisional process by the psychiatrist in forming an opinion as to the sanity or insanity of the defendant does not aid in the proof of guilt. It is perforce limited to the issue of sanity.

We conclude, therefore, that the general assembly, in providing for the admission in evidence of defendant's statements to the psychiatrist where *sanity* is the issue, but barring them on the *guilt* issue, does not violate the defendant's rights against self-incrimination.

The rule is made absolute and the cause is remanded for further proceedings not inconsistent with the views expressed herein.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE ERICKSON dissent.