The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Christina ROSENTHAL, a/k/a Tina Rosenthal, a/k/a Tina LaPlant, Defendant–Appellee.

No. 80SA221.

Supreme Court of Colorado, En Banc.

Sept. 29, 1980.

---

**3.** The Urban Renewal Law confers powers on urban renewal authorities for "public uses and purposes." Section 31–25–102(3), C.R.S.1973 (1977 Repl.Vol. 12).

**4.** *See also* the definition of "government" in the forgery statute; section 18–5–101(6), C.R.S. 1973 (1978 Repl.Vol. 8): " 'Government' means the United States, any state, county, municipality, or other political unit, any department, agency, or subdivision of any of the foregoing, or any corporation *or other entity established by law to carry out governmental functions."

**5.** The petitioners were not charged under section 18–5–401, C.R.S.1973 (1978 Repl.Vol. 8).

**552**

Paul Q. Beacom, Dist. Atty., Marc P. Mishkin, Deputy Dist. Atty., Brighton, for plaintiff–appellant.

Thomas J. B. Reed, Boulder, for defendant–appellee.

QUINN, Justice.

The People in this interlocutory appeal challenge the ruling of the trial court suppressing as substantive evidence during the prosecution's case–in–chief at the guilt trial certain admissions made by the defendant to a privately retained psychiatrist in connection with the defendant's previously entered plea of not guilty by reason of insanity. We affirm the ruling of the trial court.

The defendant, Christina Rosenthal, was charged in a four–count information with murder in the first degree after deliberation, section 18–3–102(1)(a), C.R.S.1973 (1978 Repl.Vol. 8), felony–murder during the course of a robbery, section 18–3–

102(1)(b), C.R.S.1973 (1978 Repl.Vol. 8), aggravated motor vehicle theft, section 18–4–409(2), C.R.S.1973 (1978 Repl.Vol. 8 and 1979 Supp.), and conspiracy to commit murder in the first degree and aggravated motor vehicle theft, section 18–2–201, C.R.S. 1973 (1978 Repl.Vol. 8). The charges arose out of an incident on March 13, 1979, in which the victim was stabbed to death and robbed allegedly by the defendant and her claimed common–law husband, who was also charged jointly with the defendant. The defendant entered a plea of not guilty by reason of insanity and the court, pursuant to section 16–8–105(1), C.R.S.1973 (1978 Repl.Vol. 8), ordered a sanity examination at the Colorado State Hospital. The examining psychiatrist concluded that the defendant was sane. Thereafter, the defendant's attorney arranged for a psychiatric examination by Dr. Jeffrey L. Metzner. This examination was not pursuant to motion and court order. A relative of the defendant paid for the examination and it was conducted at the county jail where the defendant was being held on the pending charges. The sheriff's department granted the psychiatrist access to the jail and made the defendant available for the examination. The examination included about eight hours of psychiatric interviews with the defendant, during which she made statements to the psychiatrist about her participation in the alleged offenses. Prior to the sanity trial, the defendant's attorney tendered Dr. Metzner's report to the district attorney. Dr. Metzner testified at the sanity trial as a defense witness. The defendant was found sane.

Thereafter, the district attorney subpoenaed Dr. Metzner as a prosecution witness for the trial on the merits, admittedly for the purpose of presenting in the prosecution's case–in–chief statements made by the defendant to the psychiatrist about her participation in the alleged offenses. The defendant challenged by motion the prosecution's right to elicit such testimony. The trial court ruled that the same limitations

on prosecutorial use of an accused's psychiatric communications applicable to a court appointed psychiatrist–to rebut defense evidence of incapacity to form the requisite specific intent and to impeach the defendant if she testifies at the guilt trial, section 16–8–107(1), C.R.S.1973 (now in 1978 Repl. Vol. 8)–apply to a privately retained psychiatrist who examines an accused in connection with an insanity plea. Accordingly, the court entered an order prohibiting the prosecution from eliciting in its case–in–chief at the guilt trial testimony from Dr. Metzner about statements made by the defendant to him during the sanity examination.

The People argue that the trial court's ruling was erroneous because the limited–use provision of section 16–8–107(1), C.R.S. 1973, applies only to a court appointed psychiatrist; and since Dr. Metzner was privately retained, neither the privilege against self–incrimination, *U.S.Const.* Amends. V and XIV; *Colo.Const.* Art. II, Sec. 18, nor the physician–patient privilege, section 13–90–107(1)(d), C.R.S.1973 (1979 Supp.), nor the statutory procedures relating to insanity pleas, section 16–8–101 *et seq.*, C.R.S.1973 (now in 1978 Repl.Vol. 8), prohibit the prosecution from eliciting the defendant's communications to the privately retained psychiatrist during its case–in–chief at the guilt phase of the proceedings. The defendant concedes that the physician–patient privilege is inapplicable to this case, and further concedes that the privilege against self–incrimination does not bar the prosecution from utilizing such evidence during the guilt trial for the limited purposes outlined in section 16–8–107(1). *Lewis v. Thulemeyer*, 189 Colo. 139, 538 P.2d 441 (1975). Her principal argument in support of the trial court's ruling is that prosecutorial use of her communications to a privately retained psychiatrist as substantive evidence would undermine her right to procure psychiatric evidence in her own behalf as contemplated by section 16–8–108(1), C.R.S. 1973 (now in 1978 Repl.Vol. 8).[1] We resolve

1. Section 16–8–108(1) (now in 1978 Repl.Vol. 8), provides that if the defendant wishes to be

examined by a psychiatrist, or other expert of choice in connection with insanity or compe-

this issue on broader grounds than those urged by the defendant. We conclude that the privilege against self–incrimination, *U.S.Const.* Amends. V and XIV; *Colo. Const.* Art. II, Sec. 18, precludes the prosecution from offering into evidence during its case–in–chief at the guilt trial the psychiatric communications made by the defendant to a privately retained psychiatrist in the course of a sanity examination conducted in preparation for the defendant's sanity trial.

## I.

Article 8 of the Colorado Code of Criminal Procedure, section 16–8–101 *et seq.*, C.R.S.1973 (1978 Repl.Vol. 8), contains the procedures governing the plea of insanity, the court–ordered psychiatric examination in connection therewith, and the limited–use restriction on the defendant's psychiatric communications made in the course of a court–ordered examination. While these statutory provisions do not expressly address the issue before us, they were enacted primarily to obviate the self–incrimination problem inherent in a unitary trial proceeding and, to that extent, are helpful to an understanding of the constitutional underpinnings of our holding. *See People v. Pearson,* 190 Colo. 313, 546 P.2d 1259 (1976); *Lewis v. Thulemeyer, supra.*

Upon entry of an insanity plea the court is required to commit the defendant for a sanity examination, section 16–8–105(1), C.R.S.1973 (1978 Repl.Vol. 8), either at the Colorado psychiatric hospital in Denver, the state hospital at Pueblo, the place where the defendant is confined, or other public institution designated by the court, section 16–8–106(1), C.R.S.1973. The examination is to be conducted by physicians who are specialists in nervous and mental diseases. Section 16–8–106(1), C.R.S.1973. Section 16–8–106(2) provides that "[t]he defendant shall have a privilege against self–incrimi-

nation during the course of [a court–ordered] examination under this section." The examining psychiatrist may use confessions and admissions in questioning the defendant, may employ special testing devices in the examination, and may testify at the *sanity trial* about the defendant's statements and reactions to the examination, insofar as pertinent to the examiner's opinion on sanity. Section 16–8–106(3), C.R.S. 1973. Section 16–8–107(1), C.R.S.1973, limits prosecutorial use at the guilt trial of communications derived from defendant as follows:

"Except as provided in this subsection (1), no evidence acquired directly or indirectly for the first time from a communication derived from the defendant's mental processes during the course of a court–ordered examination under section 16–8–106 is admissible against the defendant on the issues raised by a plea of not guilty, if the defendant is put to trial on those issues, except to rebut evidence of his mental condition introduced by the defendant to show incapacity to form a specific intent; and, in such case, that evidence may be considered by the trier of fact only as bearing upon the question of capacity to form a specific intent, and the jury, at the request of either party, shall be so instructed. If the defendant testifies in his own behalf upon the trial of the issues raised by the plea of not guilty, the provisions of this section shall not bar any evidence used to impeach or rebut the defendant's testimony."

■ Additional examinations may be ordered by the court on its own motion, or upon motion of the prosecution or defendant for good cause shown. Section 16–8–106(1), C.R.S.1973. Subsection 16–8–106(1), C.R.S.1973, states that "[n]othing in this section shall abridge the right of the defendant to procure a psychiatric examina-

---

tency proceedings, the court, upon motion, shall order the examiner chosen by the defendant be given a reasonable opportunity to conduct the examination. In *Massey v. District Court,* 180 Colo. 359, 506 P.2d 128 (1973), we held that an indigent defendant under section 16 8 108(1), C.R.S.1973, does not have the right to a psychiatric examination at state expense by a psychiatrist of the defendant's own

selection. Rather, the purpose of section 16–8–108(1), C.R.S.1973, is to guarantee "that when a defendant obtains an expert that expert will not be denied a reasonable opportunity to conduct an examination." 180 Colo. at 364, 506 P.2d at 130. In view of our construction of section 16–8 108(1), C.R.S.1973, in *Massey v. District Court, supra,* that section, by itself, does not resolve the issue on this appeal.

tion as provided in section 16–8–108." Under the latter section an incarcerated defendant can obtain a court order granting a privately retained psychiatrist a reasonable opportunity to conduct the examination. *Massey v. District Court,* 180 Colo. 359, 506 P.2d 128 (1973); *see People v. Pearson, supra* (defendant may procure private psychiatric examination). Upon completion of the examination the defendant has the following obligations of disclosure:

"A copy of any report of examination of the defendant made at the instance of the defense, containing information concerning which the defense intends to introduce evidence or testimony, shall be furnished to the prosecution a reasc    time in advance of trial." Section ;    108(2), C.R.S.1973.

### II.

■ Although the limited–use restriction of section 16–8–107(1) addresses only psychiatric communications derived from a court–ordered examination, we are unable to find in the statutory scheme any explicit or implicit intent to sanction the unrestricted use at the guilt trial of a defendant's psychiatric communications to a privately retained psychiatrist during a sanity examination. , If anything, the statutory thrust is in the other direction. Section 16–8–108(1), C.R.S.1973, clearly contemplates that the defendant may retain a private psychiatrist for a sanity examination in connection with an insanity plea. The only limitation placed on a defendant seeking such examination is that a copy of the psychiatrist's report be furnished to the prosecution reasonably in advance of the sanity trial if the defense intends to offer testimony about the examination. Section 16–8–108(2), C.R.S.1973. Section 16–8–106, C.R.S.1973, which outlines the protocol for a court–ordered examination, states that nothing therein *shall abridge* the defendant's right to an examination by a privately retained psychiatrist under section 16–8–108, C.R.S.1973. The unrestricted use at the guilt trial of the defendant's communications to a privately retained psychiatrist, indeed, would be a significant abridgement of the defendant's rights under section 16–8–108, C.R.S.1973.

■ More fundamentally, unrestricted prosecutorial use at the guilt trial of the defendant's psychiatric communications clashes directly with the privilege against self–incrimination. *U.S.Const.* Amends. V and XIV; *Colo.Const.* Art. II, Sec. 18. As the circumstances here indicate, a defendant seeking a sanity examination by a privately retained psychiatrist would be required to forego her privilege against self–incrimination at the guilt trial in order to assert adequately her right to plead and defend on grounds of insanity. If the prosecution is permitted to make unrestricted use at the guilt trial of the defendant's psychiatric communications during a sanity examination by a privately retained psychiatrist, the defendant in effect becomes a witness against herself through the conduit of the psychiatric examiner. *See United States v. Wade,* 489 F.2d 258, 259 (9th Cir. 1973) (Choy, J., dissenting); *United States v. Albright,* 388 F.2d 719 (4th Cir. 1968); *State v. Hathaway,* 161 Me. 255, 211 A.2d 558, 570–71 (1965) (Webber, J., concurring); *State v. Whitlow,* 45 N.J. 3, 210 A.2d 763 (1965); *Lee v. County Court of Erie County,* 27 N.Y.2d 432, 267 N.E.2d 452, 318 N.Y. S.2d 705 (1971), *cert. denied,* 404 U.S. 823, 92 S.Ct. 46, 30 L.Ed.2d 50 (1971); *see also* Lefelt, *Pretrial Mental Examinations: Compelled Cooperation and the Fifth Amendment,* 10 Am.Crim.L.Rev. 431 (1972); Note, *Protecting the Confidentiality of Pretrial Psychiatric Disclosures: A Survey of Standards,* 51 N.Y.U.L.Rev. 409 (1976); Note, *Psychiatry v. Law in the Pre–Trial Mental Examination: The Bifurcated Trial and Other Alternatives,* 40 Fordham L.Rev. 827 (1972). The procedures governing the insanity defense cannot be applied in a manner that destroys the constitutional safeguard against self–incrimination. *French v. District Court,* 153 Colo. 10, 384 P.2d 268 (1963). We hold, therefore, that the prosecution may not call as a witness in its case–in–chief during the guilt trial a psychiatrist privately retained by the defendant in connection with an insanity plea and elicit from the psychiatrist incriminating admissions made by the defendant during a sanity examination.

Our holding preserves the right of the criminally accused to raise the insanity defense without jeopardizing the privilege against self–incrimination. Furthermore, it accords the same limited–use protections to an accused examined by a privately retained psychiatrist as the statute grants to defendants examined pursuant to a court ordered examination under section 16–8–106(1), C.R.S.1973, and to indigent defendants requesting and receiving at state expense a court appointed psychiatrist under section 16–8–108(1), C.R.S.1973. And finally, our holding comports .with the realities of modern psychodiagnosis, which depends for its effectiveness on "a profound prying into the most hidden aspects of personality and character. . . ." Louisell, *The Psychologist In Today's Legal World: Part II*, 41 Minn.L.Rev. 731, 745 (1957). A rule sanctioning unlimited prosecutorial use of psychiatric communications deters cooperation and candidness necessary for effective diagnosis and, to that extent, erodes the reliability of opinion evidence in the fact–finding process.

The ruling of the trial court is affirmed.