**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**Philip Leslie GALIMANIS,
Defendant–Appellant.**

**No. 84CA0809.**

Colorado Court of Appeals,
Div. I.

Sept. 22, 1988.
Rehearing Denied Nov. 25, 1988.
Certiorari Pending Jan. 25, 1989.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Michael J. Heher, Deputy State Public Defender, Denver, for defendant-appellant.

PIERCE, Judge.

Defendant, Philip Leslie Galimanis, appeals the trial court judgment entered upon jury verdicts finding him guilty of first degree murder, motor vehicle theft, and violent crime. We affirm in part and reverse in part.

The operative facts of this case are not in dispute. In April 1983, the victim was found dead on the floor of her apartment. She had been beaten, stabbed, and decapitated. Police discovered that the victim's car had been taken from the apartment complex and was still missing. Nearly twenty-nine hours later, police located the automobile and discovered defendant inside, asleep. When awakened, he was

somewhat incoherent and disoriented. Defendant was then arrested and later charged.

In June 1983, defendant entered a plea of not guilty by reason of insanity. Pursuant to § 16–8–104, C.R.S. (1986 Repl. Vol. 8A), a sanity trial was held, and the jury found that defendant was sane. Subsequently, defendant was tried and convicted of the substantive crimes by a different jury.

## I.

Defendant asserts that the trial court abused its discretion in allowing a substitution of psychiatrists by an *ex parte* order. We find no abuse.

Section 16–8–106(1), C.R.S. (1986 Repl. Vol. 8A) provides that:

"For good cause shown, upon motion of the prosecution or defendant, or upon the court's own motion, the court may order such further or other examination ... as is advisable under the circumstances."

The purpose behind this section is to cause the trial court, in the exercise of judicial discretion, to decide whether good cause has been shown or exists for the appointment of additional experts. *Massey v. District Court*, 180 Colo. 359, 506 P.2d 128 (1973).

■ Therefore, in order to effectuate the purpose behind this section, we conclude that it is a better practice to afford both parties the opportunity to present evidence regarding the good cause necessary for a substitution of experts before the substitution is made.

The record here shows that a hearing on the substitution issue was held approximately nine days after the substitution was made. Nevertheless, at the hearing, defendant was afforded ample opportunity to present evidence concerning the substitution issue. Also, nothing in the record indicates that he was prejudiced in any way by the *ex parte* substitution. Accordingly, the order did not affect his substantial rights. *See* Crim.P. 52(a).

■ We also reject defendant's assertion that the trial court abused its discretion in

finding that good cause existed for the substitution of psychiatrists. The record shows that a conflict arose in the original psychiatrist's schedule, and, because of that conflict and the uncooperative behavior of the defendant, it became necessary to substitute psychiatrists. The record contains no evidence that the subsequent mental examiner was unqualified. Under these circumstances, we conclude that the trial court's finding of good cause was not an abuse of discretion. *See Garza v. People*, 200 Colo. 62, 612 P.2d 85 (1980).

■ Finally, we reject defendant's contention that the *ex parte* order denied him his constitutional right to counsel during the course of the examination. Defendant has no such right. *See United States v. Cohen*, 530 F.2d 43 (5th Cir.1976), *cert. denied*, 429 U.S. 855, 97 S.Ct. 149, 50 L.Ed. 2d 130 (1976).

## II.

■ We also find unpersuasive defendant's contention that certain photographs and video tapes admitted into evidence were unduly prejudicial. Although we agree that the evidence reflects a shocking decapitation scene, the evidence was relevant and probative of the defendant's ability to deliberate. Our review of the record leads us to conclude that the evidence was not so unduly prejudicial as to outweigh its probative value. *See People v. Avery*, 736 P.2d 1233 (Colo.App.1986); *see also* CRE 403.

## III.

■ Defendant also argues that the trial court erred in failing to exclude the entire testimony of the prosecution's psychiatrist at both the sanity trial and the trial on the merits. Defendant maintains that the psychiatrist improperly continued questioning him after he had expressed some reluctance to discuss particular topics, thereby asserting his *Miranda* rights. We disagree.

A court-ordered psychiatric examination does not implicate defendant's rights under the Fifth Amendment. *United States v.*

*Byers,* 740 F.2d 1104 (D.C.Cir.1984). Although defendant has the privilege against self-incrimination during the course of the examination pursuant to § 16–8–106(2), C.R.S. (1986 Repl. Vol. 8A), no *Miranda* type warning is required. A lengthy personal interview is one of the few effective means of ascertaining sanity. *See United States v. Albright,* 388 F.2d 719 (4th Cir. 1968). Indeed, it would be nearly impossible to evaluate a person's sanity without making inquiry. *See Thornton v. Corcoran,* 407 F.2d 695 (D.C.Cir.1969).

Even if we assume that defendant had the right to terminate the psychiatric examination, there is insufficient showing in the record that he exercised such a prerogative. He expressed some initial reluctance to discuss certain topics during the course of the examination. However, when the psychiatrist returned to the topic later in the examination, defendant described the events in detail. There is nothing in the record to show that his comments were coerced or involuntary in any way, or that his responses were the result of surreptitious mental invasion. *See Early v. Tinsley,* 286 F.2d 1 (10th Cir.1960), *cert. denied,* 365 U.S. 830, 81 S.Ct. 717, 5 L.Ed.2d 708 (1961).

Moreover, because the sanity issue is a separate proceeding before a jury that cannot consider the issue of guilt, there is no implication of a defendant's privilege against self-incrimination. *Lewis v. Thulemeyer,* 189 Colo. 139, 538 P.2d 441 (1975). Self-incrimination, by definition, applies to the admission of evidence to aid in establishing the guilt of the accused, not his sanity. *Lewis v. Thulemeyer, supra.* Moreover, there is no evidence here that defendant was assured that these statements would not be used against him. *See Wainwright v. Greenfield,* 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1985). Consequently, there is no merit to defendant's argument that the psychiatrist's testimony was improperly admitted at the sanity trial in violation of his privilege against self-incrimination.

We also reject defendant's contention that the psychiatrist's testimony was im-properly admitted during the guilt trial to rebut defendant's defense of impaired mental condition. Admission of such evidence is expressly allowed for that purpose by statute, the validity of which is not contested here. § 16–8–107, C.R.S. (1986 Repl. Vol. 8A).

Accordingly, we conclude that a psychiatrist may lawfully pursue questions designed to elicit responses helpful in arriving at an opinion regarding sanity. This questioning may continue beyond a defendant's expressed reluctance to discuss a particular topic without violating his constitutional or statutory privilege against self-incrimination. Therefore, we find no error in the trial court's admission of the psychiatrist's testimony during the guilt trial to rebut defendant's claim of impaired mental condition.

IV.

Defendant also contends that the trial court erred in allowing the prosecution to present evidence at his sanity trial that he had asserted his constitutional rights after being given a *Miranda* advisement. We agree.

In *Wainwright v. Greenfield, supra,* the Supreme Court determined that admission of a defendant's post-advisement statement asserting his *Miranda* rights violated his due process rights guaranteed by the Fourteenth Amendment. It held:

"What is impermissible is the evidentiary use of an individual's exercise of his constitutional rights after the state's assurance that the invocation of those rights will not be penalized."

In the present case, after being given a *Miranda* advisement, defendant asserted his right to an attorney before questioning by police. This assertion was used by the People as probative of defendant's sanity at his sanity trial. Use of defendant's statements for these purposes was expressly rejected by the Supreme Court in *Wainwright v. Greenfield,* and therefore, that case mandates reversal of defendant's sanity adjudication.

We reject the prosecution's contention that, because the issue of sanity was conducted in a separate, bifurcated proceeding, the admission of this evidence was probative of defendant's sanity and was, therefore, not objectionable. Even though there was no separate sanity trial in *Wainwright v. Greenfield, supra,* its holding is premised upon the unfairness of admitting a defendant's statements after law enforcement officers have implicitly assured him that such evidence will not be used. The Court held that the unfairness is grounded in the due process clause of the Fourteenth Amendment, a right to which a criminal defendant is entitled even at a sanity trial. Therefore, defendant's statements invoking his right to counsel after his *Miranda* advisement may not be used.

We further reject the People's argument that admission of defendant's statements was harmless beyond a reasonable doubt. The record shows that a motion *in limine* was filed by the prosecution for the sole purpose of admitting this evidence. There was considerable testimony offered to show that defendant was insane, and the statements in question were admitted solely for the purpose of attempting to show defendant's rationality shortly after his apprehension. Also, considering the prosecution's reliance upon the evidence throughout the proceedings, we conclude that the error was not harmless beyond a reasonable doubt. *See United States v. Remigio,* 767 F.2d 730 (10th Cir.1985), *cert. denied,* 474 U.S. 1009, 106 S.Ct. 535, 88 L.Ed.2d 465 (1985).

## V.

While we do not rule on whether the error is reversible, because this matter will be retried and the issue will probably arise again, we also agree with defendant's contention that his mother was improperly excluded from rendering an opinion regarding his "state of mind" or "mental status" during the time that he lived with her which ended three months before this crime was committed.

Section 16–8–109, C.R.S. (1986 Repl. Vol. 8A) provides that:

"In any trial or hearing in which the mental condition of the defendant is an issue, witnesses not specially trained in psychiatry or psychology may testify as to their observation of the defendant's actions and conduct, and as to conversations which they have had with him bearing on his mental condition, and they shall be permitted to give their opinions or conclusions concerning the mental condition of the defendant."

Defendant's mother testified at great length about the defendant's erratic behavior and the contacts that he had had with various psychiatrists and mental institutions throughout his lifetime. In particular, she testified concerning his actions and life-style during the months which preceded his leaving her home in Chicago and moving to Denver, some three months before the incidents of April 1983. She was not asked to give her opinion as to his sanity or his state of mind at the time the crime was committed.

Nevertheless, the trial court would not allow her to render any opinion on the defendant's mental condition because she was not qualified as an expert, and because she had had only one minimal contact with defendant in the three months immediately preceding the crime.

The first reason given for excluding the opinion is overcome by the language of § 16–8–109, C.R.S. (1986 Repl. Vol. 8A). The latter reason is not applicable because her minimal contact with defendant after he left home had no bearing on what she observed while he was still at home. The question asked of her pertained only to the four-month period during which he was at home. Accordingly, under the provisions of the statute, and the state of this record, she should have been allowed to render an opinion or conclusion concerning his mental condition during the time from September 1982 to January 3, 1983, subject to a determination of relevancy.

## VI.

Defendant also maintains that voir dire instructions regarding the fact that the prosecution would not be seeking the death penalty were improperly given. While under the circumstances of this case these instructions did not amount to reversible error, on remand the trial court should

refrain from such comment. *See People v. Hickam,* 684 P.2d 228 (Colo.1984).

## VII.

We have reviewed and considered the remainder of defendant's contentions regarding various evidentiary rulings by the trial court, and we find the rulings either not in error or not likely to occur on retrial.

Accordingly, the adjudication of sanity is reversed, and the cause is remanded with directions that the defendant be afforded a new sanity trial. In the event defendant is found to have been sane at the time of the offense, then the judgments of conviction stand affirmed. If defendant is found to have been insane at the time of the offense, then the judgments of conviction will be vacated.

CRISWELL, J., concurs.

METZGER, J., concurs in part, and dissents in part.

METZGER, Judge, concurring in part and dissenting in part.

I respectfully dissent from Part IV of the majority opinion which holds that the admission of defendant's post-advisement assertions of his *Miranda* rights at the sanity trial was reversible error. I believe that any error relating to the use of these assertions was harmless beyond a reasonable doubt and, thus, does not constitute a basis to reverse the defendant's conviction.

If there is overwhelming support in the record for a jury's verdict, error in the admission of other cumulative evidence is harmless beyond a reasonable doubt. *People v. Steele,* 193 Colo. 87, 563 P.2d 6 (1977). Further, errors of constitutional magnitude may properly be considered harmless if the evidence derived from the violation is cumulative of other evidence from which similar inferences may be drawn. *See People v. Madonna,* 651 P.2d 378 (Colo.1982); *People v. Roark,* 643 P.2d 756 (Colo.1982).

In this case, defendant did not deny having killed and decapitated the victim, and accordingly, the central issue for the jury's determination was defendant's state of mind at the time he did so. Defendant's sole assertion was that he killed the victim during a psychotic episode. He contended that he had suffered from these episodes intermittently for several years. Psychiatric testimony established that these episodes were transient and temporary.

The trial court determined that the defendant's behavior at the time of his arrest, twenty-nine hours after the victim's death, was relevant to a determination of his mental state at the time of the victim's death. While I do not necessarily agree with that ruling, since defendant's psychotic episodes were described as temporary and relatively brief, the evidence concerning defendant's sanity and rationality at his arrest is overwhelming.

Seven police officers testified that defendant behaved normally after his apprehension, and they described in detail his dress, his recognition of media personnel and his attempts to avoid them, his recognition of police officers he knew, his understanding of police instructions, and his concern about what would happen to the victim's car. These were not the words or actions of a man in the throes of a psychotic episode.

Moreover, the evidence describing defendant's actions during and after the victim's death belies the notion that defendant was experiencing a psychotic episode. The medical experts testified that defendant had engaged in a lengthy struggle with the victim and that he had severely beaten her about the face and head. He then inflicted several stab wounds, to the jaw, chest, and back, including several "hesitation-type" punctures to her back. Finally, while the victim was still alive, defendant began a meticulous and painstaking decapitation, which took "a significant amount of time" —less than "hours" but more than a few minutes. Thereafter, he washed his hands, changed his shirt, rummaged through the trunk of his inoperable car, and fled in the victim's car. He conceded that he had the requisite state of mind—specific intent—to be guilty of aggravated motor vehicle theft by taking the victim's car.

Therefore, the passing references to defendant's invocation of his right to counsel were cumulative of other, more probative evidence establishing his sanity, and did

not constitute a sufficiently significant portion of the evidence in the sanity trial to constitute reversible error.

Moreover, I find the majority's reliance on *Wainwright v. Greenfield*, 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986) to be overly mechanistic. In *Wainwright*, the evidence concerning the defendant's sanity and that concerning his guilt were inextricably interwoven in a single sanity/guilt trial. Thus, admission of his post-advisement statement may well have been prejudicial. Colorado's bifurcated sanity/guilt proceedings minimize the problem of this prejudice. More importantly, in *Wainwright v. Greenfield, supra,* the prosecution's failure to argue that admission of the defendant's statements was harmless error constituted an essential basis for both the majority's holding and the special concurrence. Here, however, the People did so argue, and I agree that the error was harmless.

Consequently, I would not reverse defendant's sanity adjudication and conviction. As to Part V, I consider the error to be harmless and, thus, not a basis for reversal. I agree with the majority's disposition of the remaining issues in this case.