The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Brian Scott KRUSE, Defendant–
Appellant.

No. 89CA0713.

Colorado Court of Appeals,
Division II.

May 9, 1991.

Rehearing Denied June 20, 1991.

Certiorari Granted Nov. 12, 1991.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Eric V. Field, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Karen Chilton Beverly, Special Deputy Public Defender, Denver, for defendant-appellant.

Opinion by Judge SMITH.

The defendant, Brian Scott Kruse, appeals the judgment of conviction entered on a jury verdict finding him guilty of first degree assault, first degree criminal trespass, and crime of violence. We reverse and remand with directions.

Based on an informant's tip, the defendant was arrested and charged by information with the crimes here at issue. Following his arrest, the defendant confessed that early one morning he and a friend had entered numerous cars in and around his apartment and removed cassette tapes and

money. The defendant further confessed to stabbing the victim of the alleged assault twice after the victim grabbed and tackled him.

The defendant initially entered a plea pursuant to § 16–8–103 C.R.S. (1986 Repl. Vol. 8A) of not guilty by reason of insanity. In connection with the plea, he was hospitalized at the Colorado State Hospital for a sanity examination. *See* § 16–8–106, C.R.S. (1986 Repl.Vol. 8A). The defendant later withdrew this plea and entered a plea of not guilty to all charges in the information.

A jury trial was subsequently held. The prosecution presented a number of witnesses to establish the defendant's presence near the scene of the alleged trespass and to establish the events culminating in the alleged assault. The prosecution also called a psychiatric service worker employed at Colorado State Hospital who testified regarding a conversation he had had with the defendant while the defendant was hospitalized for the sanity examination.

The defendant's theory of the case was premised on self defense, and he called several witnesses in support thereof. Also, he took the stand and testified to this effect on his own behalf, but the jury returned a verdict of guilty on all charges.

I.

Defendant contends that the trial court erred in allowing the admission of a psychiatric service worker's testimony on the issue of intent. We agree.

The job of the worker in question primarily entailed providing security, assisting patients, and helping with group and individual therapies. Over defendant's objection, he was permitted to testify regarding two statements the defendant made in the course of his hospitalization at Colorado State Hospital.

The witness testified that he overheard the defendant and another patient discussing the incidents which led to their arrests. He joined the conversation, telling the defendant he was "lucky the guy he stabbed

did not die", according to the witness, the defendant responded that: "It was his intention to kill the guy," and that: "He wished that the guy would have died."

Also, since it was part of his duty to interact with patients and to report his observations, the witness testified that he reported these statements on the same day to the unit physician. Indeed, he explained that he participated in the conversation because it was part of his duty to do so.

The defendant argues that the psychiatric service worker's testimony was barred under the limited-use provision of § 16–8–107(1), C.R.S. (1990 Cum.Supp.). We agree.

Section 16–8–106(1), C.R.S. (1986 Repl. Vol. 8A) provides, *inter alia,* that: "Defendant shall be observed and examined...." Also, § 16–8–107(1) explicitly directs that, except in limited situations not relevant here, evidence acquired directly or indirectly "during the course of a court-ordered examination" is inadmissible against the defendant on the issues raised by a plea of not guilty.

The dispositive issue raised by the defendant's contention is whether the statements made by the defendant to the psychiatric service worker fall within the scope of the phrase "during the course of a court-ordered examination."

In interpreting a statute's intended effect, we must first consider what objective the legislation was intended to accomplish. *In re Questions by U.S. District Court,* 179 Colo. 270, 499 P.2d 1169 (1972). Moreover, if the statute is part of a comprehensive program, the objective should be viewed in light of the balance of the enactments relating to the same subject matter. *Huff v. Tipton,* 810 P.2d 236 (Colo.App.1991).

Here, the objective of § 16–8–107(1) and its relationship to other closely related enactments on sanity examinations was thoroughly explored in *Lewis v. Thulemeyer,* 189 Colo. 139, 538 P.2d 441 (1975) and *People v. Rosenthal,* 617 P.2d 551 (Colo. 1980). These cases hold that § 16–8–106 and § 16–8–107 were carefully drafted to

avoid the constitutional proscriptions against self-incrimination.

Self-incrimination, as the *Thulemeyer* court noted, by definition contemplates the use of a defendant's incriminating statements, made during the course of the sanity examination, to aid in establishing the defendant's guilt. Thus, in order to address this constitutional issue, the General Assembly drafted § 16–8–106 to allow, at the separate sanity trial, the admission of a defendant's incriminating statements made during the course of a court-ordered examination if the statements were relevant to the examiner's opinion on sanity.

Contrarily, § 16–8–107(1) was drafted to bar prosecutorial use of these same statements at trial on the issue of the defendant's guilt, thus protecting a defendant's constitutional privilege against self-incrimination.

■ In light of the foregoing, we hold that the phrase "during the course of a court-ordered examination" as set forth in § 16–8–107(1) must be construed to include all communications made by the defendant to any hospital employee during the course of his hospitalization for a sanity examination. All observation of the behavior and conduct of the defendant during his period of psychiatric confinement is part of his "examination."

■ We are aware that this interpretation of the phrase will bar the admission of statements made, as here, outside the confines of a "formal" examination. However, this interpretation is consistent with the broad interpretation of "examination" set forth in *People v. Lyles*, 186 Colo. 302, 526 P.2d 1332 (1974).

We are likewise aware that this interpretation will bar statements made to parties other than physicians or psychologists. *See* § 16–8–106. We conclude, however, that such preclusion is necessary to protect the defendant's constitutional right against self-incrimination. The defendant, in reality, has no means to determine, once he is committed, with whom he does or does not have a therapeutic or "examination" relationship. Moreover, many employees, such

as the psychiatric service worker here, have a responsibility to interact with patients and to report their observations and communications to the defendant's "examining" physician. In this manner, the defendant's statements become a component of the physician's examination.

Finally, we do not find this interpretation to be inconsistent with the language of § 16–8–106 regarding who shall *observe* and *examine* a defendant. A determination on the issue of sanity requires a professional evaluation. Clearly, the intent of the language in § 16–8–106 is to insure this result. The language is unrelated, therefore, to the intent of § 16–8–107(1) to limit prosecutorial use of a defendant's statements to establish guilt.

In sum, we hold that the psychiatric service worker's testimony was inadmissible under § 16–8–107(1) on grounds that it violated the defendant's privilege against self-incrimination.

## II.

Defendant next contends that the trial court erred in allowing the prosecution to explore his original plea of not guilty by reason of insanity. We disagree.

■ The essence of defendant's contention is that the prosecution's inquiry is prohibited under CRE 410. However, it is undisputed that the defendant was the first to refer to his initial insanity plea. Thus, he may not complain on appeal of an error which he has invited or injected into the case. *People v. Zapata*, 779 P.2d 1307 (Colo.1989).

## III.

Defendant further contends that there was insufficient evidence to support his conviction for criminal trespass. We disagree.

Defendant argues that there was no competent evidence establishing that he was the perpetrator of the crime or that an unlawful entry occurred.

■ Upon review of the record, we conclude that the defendant's argument is

without merit. The admissions made by defendant to the investigating police officer together with the corroborating testimony of several witnesses was sufficient to establish the elements of the offense beyond a reasonable doubt.

The judgment is reversed and the cause is remanded for a new trial to be conducted in accordance with the views expressed in this opinion.

STERNBERG, C.J., concurs.

VAN CISE, J., dissents.

Judge VAN CISE * dissenting.

I respectfully dissent from Part I of the majority opinion. In my opinion, the trial court did not err in allowing the admission of the psychiatric service worker's testimony.

Defendant's argument that the service worker's testimony was barred under the limited use provision of § 16–8–107(1), C.R.S. (1990 Cum.Supp.) is raised for the first time on appeal. His objection to the witness' testimony in the trial court was based on relevancy under CRE 401 and 403 and, alternatively, the witness' inability to recall clearly the defendant's statements.

Having failed to object in the trial court on the grounds now asserted, defendant is deemed to have waived the objection on appeal. CRE 103; *People v. Watson,* 668 P.2d 965 (Colo.App.1983).

Furthermore, even if the argument had been properly raised, it is without merit. Section 16–8–107(1) bars the admission of only those communications derived from a defendant's mental processes "during the course of a court-ordered *examination.*" Moreover, § 16–8–106(1) provides that the examination is to be conducted by physicians with specialty training or by psychologists.

Here, it is undisputed that the witness was neither a physician nor a psychologist. Indeed, the witness testified his duties were largely related to security. Further-

more, the record shows that defendant's statements were not made during the course of an examination but rather during a conversation with another patient.

Since I agree with the majority's conclusions in Parts II and III, and conclude that the polygraph reference by the prosecution was harmless, I would affirm the judgment of the trial court.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).