Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 10, 2019

**2019 CO 50**

**No. 18SA237, *People v. Brown*—Reverse Transfer—Waiver—Self-Incrimination.**

The supreme court exercised its original jurisdiction under C.A.R. 21 to review the trial court's order denying a request for a protective order during a reverse-transfer hearing.

The supreme court concludes that neither the reverse-transfer statute, § 19-2-517(3), C.R.S. (2018), nor common law principles regarding the scope of waiver provides a defendant with the ability to temporarily waive privilege as to information disclosed during a reverse-transfer hearing. The court also concludes that this result does not impermissibly burden a defendant's Fifth Amendment right against self-incrimination.

Thus, the supreme court holds that, if a defendant discloses privileged information in open court during a reverse-transfer hearing, that defendant would waive privilege as to any such information at trial.

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

**2019 CO 50**

**Supreme Court Case No. 18SA237**
*Original Proceeding Pursuant to C.A.R. 21*
District Court, City and County of Denver, Case No. 17CR20001
Honorable Kenneth M. Laff, Judge

**In Re
Plaintiff:**

The People of the State of Colorado,

v.

**Defendant:**

Brandon D. Brown.

**Rule Discharged**
*en banc*
June 10, 2019

**Attorneys for Plaintiff:**
Beth McCann, District Attorney
Johanna G. Coats, Deputy District Attorney
  *Denver, Colorado*

**Attorneys for Defendant:**
Appeal to Justice, LLC
Amy D. Trenary
  *Broomfield, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.
**JUSTICE GABRIEL** specially concurs.
**CHIEF JUSTICE COATS** does not participate.

¶1 After being charged with first degree murder as an adult in district court, Brandon Brown exercised his statutory right to request a "reverse transfer" to juvenile court. In doing so, he asks us to address whether he may temporarily waive privilege as to certain information at the reverse-transfer hearing without suffering a continued waiver at trial.[1]

¶2 We hold that he may not. Nothing in the reverse-transfer statute gives Brown the ability to make such a limited waiver. And, neither common law scope-of-waiver limitations nor constitutional principles regarding impermissibly burdening rights changes that result. By disclosing otherwise privileged information in open court during a reverse-transfer hearing, Brown would waive privilege as to any such information at trial. Because we agree with the trial court's ruling to the same effect, we discharge our rule to show cause.

## I. Facts and Procedural History

¶3 Brandon Brown was charged as an adult in district court for crimes alleged to have taken place in 2012, when he was seventeen years old. The district attorney charged Brown with one count of first degree murder, eight counts of attempted first degree murder, and one count of conspiracy to commit aggravated robbery. Brown

---

[1] Brown framed the issue as follows: "Whether the district court abused its discretion by refusing to issue a protective order preventing the prosecution from admitting[,] into trial evidence[,] confidential and privileged information Mr. Brown wishes to disclose for the sole purpose of supporting his motion for reverse-transfer."

exercised his statutory right to seek a reverse transfer, a process that could result in his case being transferred from district court, where he would be tried as an adult, to juvenile court, where he would face prosecution under the Children's Code. *See* § 19-2-517(3)(a), C.R.S. (2018) (outlining the procedures for transferring a case from district court to juvenile court).

¶4 Before the reverse-transfer hearing, however, Brown sought a protective order, requesting that the district court prohibit the prosecution from using at trial "[a]ny evidence presented at the reverse-transfer hearing, and/or in briefs related to the issue of reverse-transfer." In addition to this wide-ranging request, Brown specifically singled out:

- expert reports;

- medical, dental, mental health, and/or psychological evaluations, screenings, or treatment, and any records underlying such evaluations or records upon which such evaluations are based;

- school records;

- Department of Human Services records;

- records of dependency and neglect proceedings;

- confidential records maintained by agencies of the judicial department or executive branch; and

- any other confidential records.

¶5 The district court denied the request for the protective order altogether. It found that it was "unlikely that the type of evidence generally presented at a reverse transfer hearing would be relevant and admissible at a trial." But, in any event, it held that

3

"neither case law nor statute" empowers a defendant at a reverse-transfer hearing to introduce privileged information without waiving privilege as to that information.

¶6 We granted Brown's petition for a rule to show cause pursuant to C.A.R. 21. He argues that the district court abused its discretion by refusing to issue the protective order.

## II. Analysis

¶7 We first address why jurisdiction is appropriate under C.A.R. 21. Because this is a question of first impression as to which a remedy on appeal could prove inadequate, we choose to exercise our original jurisdiction. Second, we identify the standard of review. Third, we analyze whether Brown can partially waive privilege during the reverse-transfer hearing. We conclude that any disclosure of privileged information at the reverse-transfer hearing would constitute a waiver at trial.

### A. Original Jurisdiction

¶8 We generally hear petitions under C.A.R. 21 that "raise issues of first impression" and "are of significant public importance." *See People v. Johnson*, 2016 CO 69, ¶ 7, 381 P.3d 316, 318 (quoting *People v. Steen*, 2014 CO 9, ¶ 8, 318 P.3d 487, 490). Additionally, we have discretion to exercise our original jurisdiction under C.A.R. 21 when "a remedy on appeal would prove inadequate." *Id.* at ¶ 8, 381 P.3d at 318 (quoting *People v. Sisneros*, 55 P.3d 797, 799 (Colo. 2002)).

¶9 All three considerations apply here. Whether a defendant may partially disclose privileged information in a reverse-transfer hearing is a question of first impression

4

with significant public importance, and the issue is likely to recur. Additionally, as a practical matter, the wrongful disclosure of privileged information is irremediable on appeal, as the privileged information will have been disclosed. *See Sisneros*, 55 P.3d at 799.

¶10 For all these reasons, we choose to exercise our original jurisdiction here.

## B. Standard of Review

¶11 While we review a trial court's decision denying a protective order for abuse of discretion, *Bond v. Dist. Court*, 682 P.2d 33, 38 (Colo. 1984), we review questions of law, such as the interpretation of the reverse-transfer statute, de novo, *Johnson*, ¶ 9, 381 P.3d at 318 (citing *Bostelman v. People*, 162 P.3d 686, 689 (Colo. 2007)).

## C. Brown May Not Partially Waive Privilege

¶12 Brown asserts privilege as to numerous documents, evaluations, and testimony by some witnesses. And although the parties disagree as to whether some of this correspondence and other evidence is privileged information, that level of the analysis is potentially rendered moot by another: Even if all that Brown seeks to protect is privileged, would he waive any such privilege upon disclosure of the information during a reverse-transfer hearing? To answer this question, we first turn to the language of the reverse-transfer statute.

## 1. The Reverse-Transfer Statute

¶13 The plain language of the statute doesn't explicitly give Brown the ability to make a limited waiver of privilege.

¶14    The statute provides that "[a]fter a juvenile case has been charged by direct filing

. . . in district court, the juvenile may file in district court a motion to transfer the case to

juvenile court." § 19-2-517(3)(a). After describing some procedural requirements (time

to file, responses by the district attorney, and so on), the statute lists factors for a court

to consider "[i]n determining whether the juvenile and the community would be better

served by" adjudicating in juvenile or district court. *See* § 19-2-517(3)(a)–(b).

¶15    Among those factors are:

- "age . . . and the maturity of the juvenile as determined by considerations of the juvenile's home, environment, emotional attitude, and pattern of living";

- "record and previous history of the juvenile in prior court-related matters";

- "current and past mental health status";

- "likelihood of the juvenile's rehabilitation by use of the sentencing options available in the juvenile and district courts"; and

- "previous[] commit[ment] to the department of human services."

§ 19-2-517(b)(IV), (V), (VI), (VII), (X).

¶16    In interpreting a statute, we give words and phrases their plain and ordinary

meaning, read them in context, and construe them according to the rules of grammar

and common usage. *See Doubleday v. People*, 2016 CO 3, ¶ 19, 364 P.3d 193, 196. Our

primary task is to "ascertain and effectuate the intent of the General Assembly."

*Turbyne v. People*, 151 P.3d 563, 567 (Colo. 2007). Statutes should be applied as written,

and we do not add or subtract words. *See State v. Medved*, 2019 CO 1, ¶ 19, 433 P.3d 33,

37 ("[I]n interpreting a statute, we must accept the General Assembly's choice of

6

language and not add or imply words that simply are not there." (quoting *People v. Diaz*, 2015 CO 28, ¶ 15, 347 P.3d 621, 625)); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 94 (2012) ("[An] absent provision cannot be supplied by the courts.").

¶17   While the enumerated factors might implicate certain potentially privileged information (or at least confidential information), nowhere does the statute grant Brown the right to disclose that information solely for the purposes of reverse transfer.  The statute is completely silent as to limited disclosure.  And it isn't our role to add such language.[2]

¶18   We therefore decline the invitation to effectively do so here.[3]

### 2.  Waiving Privilege Extends from the Reverse-Transfer Hearing to Trial

¶19   Looking beyond the plain language of the statute, Brown argues that, as a matter of common law, waiver is "limited to the purposes for which the information is placed

---

[2] The legislature has provided for limited waiver in other circumstances, such as insanity and competency.  *See* § 16-8-107(1)(a), C.R.S. (2018); § 16-8.5-108, C.R.S. (2018).  That the legislature has explicitly provided for limited waiver elsewhere but not in the reverse-transfer statute further suggests that the legislature didn't intend to create limited waiver here.

[3] Because the plain and unambiguous language of the reverse-transfer statute resolves the issue of limited waiver, we need not reach for tools, such as legislative history, used to throw light on more enigmatic texts.

at issue." That "limited" purpose here, he contends, is the reverse-transfer hearing. As a result, any disclosure must be confined to that hearing. We disagree.

¶20 Both parties agree that privilege is waived when the "privilege holder 'has injected his physical or mental condition into the case as the basis of a claim or an affirmative defense.'" *In re Alcon v. Spicer*, 113 P.3d 735, 739 (Colo. 2005) (quoting *Clark v. Dist. Court*, 668 P.2d 3, 10 (Colo. 1983)). However, Brown argues that "as the basis of a claim or an affirmative defense" means that he is only putting his physical and mental condition at issue with respect to the jurisdictional issue in the reverse-transfer hearing; he isn't simultaneously putting his physical and mental condition at issue as to the underlying alleged crimes. Brown emphasizes the language in *Alcon* that states that waivers "have always been limited by the circumstances of the case." *Id.*

¶21 But *Alcon* doesn't compel the result that Brown seeks. In *Alcon*, we noted that privilege holders only impliedly waive privilege as it relates to the specific condition that was placed at issue. *Id.* Alcon waived privilege "with respect to the injuries claimed in her lawsuit," but not her entire medical record. *Id.* at 740. In other words, the scope of the information encompassed by Alcon's waiver of privilege was limited to the "circumstances of the case"—the types of injuries alleged and nothing else. *Id.* at 739. Once waived, however, the privileged information was waived for the purposes of the entire litigation; nothing about our analysis suggested that Alcon's waiver could be limited to a particular hearing or part of the litigation.

8

¶22    Brown's reliance on our recent decision in *Zapata v. People* is equally misplaced. We held in *Zapata* that waiver under section 16-8.5-104, C.R.S. (2018) (addressing waiver of privilege in the competency context) is limited to the "parties and the court in *that defendant*'s case." *Zapata v. People*, 2018 CO 82, ¶ 41, 428 P.3d 517, 526–27. This holding does not apply here for at least three reasons. First, we came to our conclusion based on the specific statutory scheme at issue there, not on common law principles. *Id.* at ¶ 44, 428 P.3d at 527 ("[W]here, as here, the General Assembly has specified that only a limited waiver occurs, that—not a general common law principle—controls."). Second, the statute at issue in *Zapata* singled out—in five out of the six subsections—three recipients for disclosure. *Id.* at ¶ 42, 428 P.3d at 527. Thus, the statute dictated limited waiver. *Id.* at ¶ 45, 428 P.3d at 528. Third, even assuming that the analysis could somehow apply to the reverse-transfer statute, the defendant in *Zapata* was trying to gain access to medical records of *another* person from a *different* case. *Id.* at ¶¶ 11–12, 428 P.3d at 522. By contrast, Brown seeks to maintain his *own* privilege in the *same* case.

¶23    Moreover, our decision in *People v. Higgins* undercuts Brown's argument regarding the scope of the waiver. There, a juvenile, through her defense counsel, agreed to a state-administered mental health assessment. *People v. Higgins*, 2016 CO 68, ¶ 2, 383 P.3d 1167, 1168. Later, the district attorney dismissed the juvenile charges and charged the defendant as an adult. *Id.* at ¶ 3, 383 P.3d at 1168. The defendant then requested a reverse-transfer hearing and sought to suppress the mental health assessment, arguing that the trial court was required to give Fifth Amendment

9

self-incrimination warnings before the assessment. *Id.* at ¶¶ 3, 10, 383 P.3d at 1168, 1169. But we declined to address that issue, concluding that, because the defendant consented to the assessment, there were no Fifth Amendment implications. *Id.* at ¶ 11, 383 P.3d at 1169. In other words, the defendant had already waived her right to withhold that information, even though the assessment took place before the defendant's bid for reverse transfer. Thus, the reverse-transfer hearing and the underlying claims were all one "case" and any privilege waived in one applied to the other. So it is here as well.

¶24 Therefore, our jurisprudence on waiver offers Brown no refuge.

### 3. There's No Impermissible Burden on Constitutional Rights

¶25 Brown also contends that refusing to grant a protective order impermissibly burdens his Fifth Amendment right against self-incrimination. But Brown isn't compelled to produce any privileged information and isn't punished for choosing not to. As a result, there isn't an impermissible burden on his Fifth Amendment rights.

¶26 The thrust of Brown's argument is that his situation is the same as the defendant's in *People v. Rosenthal*. *See* 617 P.2d 551 (Colo. 1980). There, we held that "unrestricted prosecutorial use at the guilt trial of the defendant's psychiatric communications clashes directly with the privilege against self-incrimination." *Id.* at 555. The defendant had hired her own psychiatrist to conduct an insanity evaluation in pursuit of a not guilty by reason of insanity plea. *Id.* at 552–53. Although there were statutory prohibitions on using information obtained from the state-mandated

evaluation, there were no similar protections for a privately obtained evaluator. *Id.* at 553. Nevertheless, we reasoned that allowing use of the psychiatric communications with the private evaluator would require the defendant to "become[] a witness against herself through the conduit of the psychiatric examiner." *Id.* at 555.

¶27 But the reverse-transfer hearing and a not guilty by reason of insanity evaluation are apples to oranges. There is no requirement that a defendant provide explicit information about the alleged offense during a reverse-transfer hearing. *See* § 19-2-517(3)(a)-(b). Yet a sanity examination requires exactly that. The statutory definition of "sanity examination" says so: "[A] court-ordered examination of a defendant . . . directed to developing information to determining the sanity or insanity of the defendant at the *time of the commission of the act* with which he is charged." § 16-8-102(8), C.R.S. (2018) (emphasis added). So, in *Rosenthal*, the defendant was forced to "become[] a witness against herself" because she was *required* to speak about the offense itself. *Rosenthal*, 617 P.2d at 555. Brown is required to do no such thing, as we demonstrate below.[4]

---

[4] Brown also relies on *People v. Chavez* for a similar proposition. *See* 620 P.2d 1362, 1365 (Colo. 1981). There we held that there was "an intolerable tension" between the right to testify in one's defense and the right against self-incrimination when it comes to the combination of a habitual criminal charge and a separate, substantive offense. *Id.* To properly defend against both charges, the defendant would be required to incriminate himself as to the habitual charge, which then could be used against him for the separate charges. *Id.* at 1364. In other words, the defendant had no choice. Brown has one.

11

¶28 First, *Johnson* made clear that the reverse-transfer statute doesn't compel a defendant to produce any mental health records. *Johnson*, ¶ 15, 381 P.3d at 319 ("If privileged information is not 'made available' by the privilege-holder, nothing in the statute gives the trial court the power to force a party to disclose privileged information."). Thus, although Brown *may* submit privileged information at the reverse-transfer hearing, nothing forces him to do so. We have never held that being confronted with a choice—even a difficult one—regarding whether to waive privilege necessarily produces an unconstitutional burden.

¶29 Second, while the reverse-transfer statute implicates potentially privileged information, it doesn't "threaten[] to inflict 'potent sanctions'" for failing to disclose such information. *People v. Roberson*, 2016 CO 36, ¶ 31, 377 P.3d 1039, 1044 (quoting *Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977)) (reasoning that the requirement to answer incriminating questions in order to maintain probation impermissibly burdened the defendant's constitutional rights). And because the reverse-transfer statute doesn't "automatically penalize" failure to disclose privileged information—as *Johnson* demonstrates—it doesn't impermissibly burden Brown's Fifth Amendment right against self-incrimination. *See People v. Sapp*, 934 P.2d 1367, 1370 (Colo. 1997).

¶30 In sum, because Brown isn't required to disclose any privileged information and is not penalized for declining to do so, the reverse-transfer statute doesn't impermissibly burden the Fifth Amendment right against self-incrimination.

12

## III. Conclusion

¶31 We acknowledge that Brown faces a difficult choice regarding whether to disclose privileged information during his reverse-transfer hearing. But that difficulty doesn't grant him the right to limit any resulting waiver to that hearing. (As the trial court noted, however, whether any disclosed information is admissible at trial is a different question.) While we understand that this uncertainty might hinder Brown and other similarly situated defendants from offering a full picture of their case during the reverse-transfer hearing, neither the reverse-transfer statute nor caselaw on waiver or impermissibly burdening constitutional rights supplies Brown with the remedy that he seeks. To the extent that this is a glitch in the statutory scheme, it is up to the General Assembly to decide whether to fix it.

¶32 Therefore, we hold that Brown may not limit waiver to his reverse-transfer hearing. Accordingly, the trial court's order is affirmed.

**JUSTICE GABRIEL** specially concurs.

JUSTICE GABRIEL, specially concurring.

¶33    I join the majority's opinion in full because I believe that the conclusion that it reaches is compelled by applicable statutory and case law.  I write separately, however, to express my concern that the result that the law dictates, which I fear will deter many juvenile offenders who are charged as adults from seeking a reverse transfer of their cases, may not be what the legislature intended when it enacted the reverse-transfer statute.

¶34    The reverse-transfer statute, section 19-2-517(3), C.R.S. (2018), is part of the Colorado Children's Code, sections 19-1-101 to 19-7-103, C.R.S. (2018).  That Code provides, in pertinent part, that the purpose of the juvenile justice system is to hold public safety "paramount" while at the same time taking into consideration "the best interests of the juvenile, the victim, and the community in providing appropriate treatment to reduce the rate of recidivism in the juvenile justice system and to assist the juvenile in becoming a productive member of society."  § 19-2-102(1).  Consistent with this purpose, the Code recognizes that, in certain circumstances, the juvenile and the community would be better served by having a juvenile offender tried in juvenile court, rather than as an adult in district court.  *See* § 19-2-517(3).  Such a view is also consistent with the Supreme Court's recognition that juvenile offenders are fundamentally different from adults for purposes of sentencing because (1) they lack maturity and have "an underdeveloped sense of responsibility"; (2) they "are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure"; and

1

(3) their characters are "not as well formed" as those of adults. *Roper v. Simmons*, 543 U.S. 551, 569–70 (2005) (quoting *Johnson v. Texas*, 509 U.S. 350, 367 (1993)).

¶35 Concluding that a juvenile waives privilege as to certain information that he or she wishes to present at a reverse-transfer hearing arguably undermines the foregoing principles because it potentially chills a juvenile offender's exercise of the right to seek a reverse transfer of his or her case in circumstances in which the juvenile and the community will be better served by adjudicatory proceedings in juvenile court.

¶36 It is not clear to me that the legislature intended such a result, nor can I perceive a legitimate basis for chilling a juvenile offender's right to seek a reverse transfer in this way.

¶37 Adopting a limited waiver of privilege in the present context will not prejudice the People because they will receive the information at issue in advance of the reverse-transfer hearing so that they will be able to prepare properly. Moreover, as everyone in this case appears to concede, information of the type at issue is unlikely to be admissible at the trial on the merits. Accordingly, I find it difficult to discern the interests that the People are seeking to vindicate in arguing that Brown would waive any privileges that he possesses by introducing at a reverse-transfer hearing evidence that section 19-2-517(3)(b) essentially compels him to produce.

¶38 For these reasons, although applicable law compels me to join the majority opinion, I respectfully urge the General Assembly to clarify whether it intended a waiver of privilege in the circumstances presented here and, if not, to enact legislation

2

that establishes appropriate limits on any waiver of privilege resulting from a juvenile's

presentation of statutorily mandated evidence at a reverse-transfer hearing.