**STATE of Minnesota, Respondent,**

v.

**Guy Alan SULLIVAN, Appellant.**

No. C4–92–573.

Supreme Court of Minnesota.

June 25, 1993.

Evan W. Jones, Asst. State Public Defender, John M. Stuart, State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey III, Atty. Gen., Robert A. Stanich, Sp. Asst. Atty. Gen., St. Paul, Bradley C. Rhodes, Aitkin County Atty., Aitkin, John J. Muhar, Itasca County Atty., Grand Rapids, for respondent.

## OPINION

PAGE, Justice.

Appellant Guy Alan Sullivan was convicted of three counts of first degree felony murder and one count of kidnapping for the kidnapping, rape, and murder of Carin Streufert on June 15, 1991. On appeal, Appellant seeks a new trial, arguing that the trial court erred by admitting into evidence photographs of the victim taken before and after the murder, and of the crime

scene where she was raped, murdered, and buried. He also argues that the trial court erred by admitting testimony from another woman who encountered Appellant the night of the murder. We affirm.

In the early morning hours of June 15, 1991, Carin Streufert was kidnapped, raped, and murdered. She was shot twice—once in the head and once in the neck. Appellant admits participating in the kidnap and rape, but states that his friend, James Swanson, forced his participation at gunpoint. He denies any involvement in the murder.

Streufert was last seen alive by her friends at approximately 2:45 a.m. on the morning of June 15, 1991, when she left the Grand Rapids Perkins to walk home. She never arrived. Her disappearance went unexplained for several days, until Appellant arrived at the Itasca County Sheriff's Department at 3:00 a.m. on June 19, 1991. He told police that his friend Swanson committed the murder, and, over the course of the next several hours, he made five statements to the police describing the events leading to Streufert's death.

During the first statements, Appellant described how he and Swanson approached Streufert. Appellant said that he and Swanson were driving in Appellant's car when Swanson saw Streufert and said "I want that girl." On Swanson's order, Appellant said, he pulled his car up beside Streufert. Swanson then got out and forced her into the car at gunpoint. Appellant stated that Swanson got into the back seat of the car and held the gun on both Streufert and him. Appellant then drove to Jacobson, about 20 miles from Grand Rapids.

In his first statements, Appellant said that he remained in the car while Swanson took Streufert to a clearing in a wooded area and raped and murdered her. Following his second statement, Appellant took police to the trail that leads to the clearing where the acts occurred. When he returned with the police to Grand Rapids, Appellant gave another statement that was similar to the ones he had already given.

That evening, Appellant gave his fifth statement to the police. This statement was materially different from the previous statements. Whereas before he denied that he and Swanson had approached other women on the evening of Streufert's murder, in this statement Appellant admitted that he and Swanson had followed about seven or eight cars with women in them that night. He also admitted that they approached a couple of other women on foot. In addition, Appellant changed his story that he remained in the car while Swanson raped and murdered Streufert. In this statement, he admitted that he too went to the clearing, and stated that Swanson forced him at gunpoint to have intercourse with Streufert. He continued to deny that he committed the murder, stating that Swanson fired both shots, but he admitted that after Streufert was shot, he helped Swanson drag the body away from the clearing. He then lead the police to the site where Streufert was buried.

Appellant was then charged with first-degree premeditated murder for the murder of Carin Streufert. He was also charged with three counts of first-degree felony murder and one count of kidnapping. Minn.Stat. §§ 609.185(1), (2), and (3); 609.25, subds. 1(2) and 2(2) (1992). The offenses underlying the felony murder counts were: kidnapping; aiding and abetting first- or second-degree criminal sexual conduct; and first- or second-degree criminal sexual conduct. *See* Minn.Stat. §§ 609.25, subd. 1(2); 609.05, 609.342, subd. 1(d) and 609.343, subd. 1(d) (while using a dangerous weapon); and 609.342, subd. 1(f)(ii) and 609.343, subd. 1(f)(ii) (while accomplice armed with dangerous weapon).

At trial, the state introduced the five statements Appellant gave to the police. The state also introduced expert testimony which established that Streufert was shot once in the back of her head and a second time under her jaw; each shot was lethal in itself; Swanson's fingerprints were found on the gun, but Appellant's were not; blood on Appellant's pants was found to be human blood, but the stains were too small to allow testing for blood type; ABO blood type testing on semen samples taken from a tampon pushed up into Streufert's uterus established that the semen came from a type B secretor, the same type as Appel-

lant; and the semen could not have come from Swanson, a non-secretor who has no traceable ABO factors in his semen.

Appellant's defense was that he had been forced by Swanson to participate in the kidnapping and rape, and that he had not participated in the murder. Appellant was convicted on all counts, except first-degree premeditated murder.[1] This appeal followed.

Two events at trial are the basis of this appeal. First, the state introduced, and the court admitted over objection, ten photographs of Streufert, including one taken before she was murdered, two autopsy photos showing her injuries, and seven pictures of the site where Streufert was buried.[2] Appellant argues that these photos were not relevant and served merely to arouse the prejudice of the jury. Second, the state introduced testimony from Meredith Friberg, who testified that two men, one of whom she identified as Appellant, approached her on the night that Streufert was murdered. Friberg testified that one of the men said "hello" to her as they passed, and that the men watched her enter her house. Appellant argues that the introduction of this testimony denied him a fair trial.

## I.

Appellant contends that the photos should not have been admitted because they were not relevant. He argues that because he did not dispute that Carin Streufert was murdered, the photographs did not "tend to make the existence of a material fact more or less likely to have occurred" and therefore the only purpose of the photos was to inflame the passion of the jury by contrasting Streufert's pre-death photo from college with shocking and grotesque photos of her after having been kidnapped, sexually assaulted, murdered, and then buried in the woods. The state argues that there was a basis for the admission of the photos, as they presented evidence to the jury tending to show the

elements of premeditation and intent. In addition, the state argues that the photos of the crime site aided the testimony of witnesses and helped the jury by depicting objects and conditions surrounding the murder, and that the pre-death photo presented Streufert as a human being.

■ The admission of photographs is a matter left to the discretion of the trial judge. *State v. Friend*, 493 N.W.2d 540, 544 (Minn.1992). Photographs need not be excluded if the basis for their exclusion is simply that they are graphic. *Id.*

> Photographs are admissible as competent evidence where they *accurately* portray anything which it is competent for a witness to describe in words, or where they are helpful as an aid to a verbal description of objects and conditions, provided they are relevant to some material issue; and they are not rendered inadmissible merely because they vividly bring to jurors the details of a shocking crime or incidentally tend to arouse passion or prejudice. This is the general rule, and any other would be an anachronism in this day when pictures are a common and recognized medium for the accurate portrayal of objects and events.

*State v. DeZeler*, 230 Minn. 39, 46–47, 41 N.W.2d 313, 319 (1950).

■ At trial, the state introduced expert medical testimony which established that Streufert was shot once in the back of the head and a second time under the jaw. In his testimony, the state pathologist used the two autopsy photographs to describe the location and extent of the wounds because he felt they would be helpful in explaining his autopsy findings. In showing the number and severity of the wounds, the state was able to present evidence of premeditation and intent, both elements of first-degree murder under Minn.Stat. § 609.185(1), (2), and (3), as they supported the state's contention that Streufert was shot execution style, in addition to being demonstrable visual evidence of the cause

---

1. This court has already affirmed Swanson's conviction of first-degree murder in connection with the rape, murder, and killing of Streufert. *State v. Swanson*, 498 N.W.2d 435 (Minn.1993).

2. Prior to being shown to the jury, the trial court reviewed the photographs to be introduced. Two photographs of the burial site which showed close-ups of Streufert's head were excluded by the trial court.

of death. We recognize that Appellant does not deny that Streufert was shot, but the state must still prove the elements of premeditation to obtain a first-degree murder conviction.

■ A BCA forensic scientist used the seven photos of the grave site, as well as other photos taken at the crime scene, to assist him in describing the events leading up to the murder, the wounds Streufert suffered, and the effort made by Appellant and Swanson to hide the body. These photographs were properly admitted because they assisted the witness in describing the conditions, location, and circumstances surrounding Streufert's death.

■ Finally, the fact that the trial court made individual determinations as to the appropriateness of the photos is sufficient to show a proper exercise of discretion, and that the trial court balanced their probative value against their potential for creating unfair prejudice. Minn.R.Evid. 403. *See Friend,* 493 N.W.2d at 544. Appellant does not challenge the accuracy of any of the photographs. Thus, we hold that the trial court did not abuse its discretion by admitting the photos.

## II.

■ Appellant also contends that admission of Friberg's testimony constitutes irrelevant, unnecessary, and prejudicial *Spriegl* evidence which denied him his constitutional right to a fair trial. *See State v. Spriegl,* 272 Minn. 488, 139 N.W.2d 167 (1965). The state argues that it introduced the testimony of Meredith Friberg to counter assertions made by Appellant on direct examination that kidnapping a woman was entirely Swanson's idea and that he was not aware of the plan.

We dealt with a similar argument by the defendant in the companion case where we held that Friberg's testimony was admissible because it was not *Spriegl* evidence, but, in fact, constituted proper rebuttal evidence. In that case we stated:

> In general, rebuttal evidence consists of that which explains, contradicts, or refutes the defendant's evidence, *State v. Gore,* 451 N.W.2d 313, 316 (Minn.1990), and "the determination of what consti-

tutes proper rebuttal evidence rests almost wholly in the discretion of the trial court." *State v. Eling,* 355 N.W.2d 286, 291 (Minn.1984) (*citing State v. Collins,* 276 Minn. 459, 473, 150 N.W.2d 850, 860 (1967), *cert. denied,* 390 U.S. 960 [88 S.Ct. 1058, 19 L.Ed.2d 1156] (1968)). Freeberg's [sic] testimony tended to rebut defendant's claim [on direct examination] that he was not stalking * * *. Thus, it was within the trial court's considerable discretion to allow Freeberg's [sic] testimony as rebuttal evidence.

*State v. Swanson,* 498 N.W.2d 435, 440 (Minn.1993). There is no meaningful distinction between this case and *Swanson* in terms of the admission of Friberg's rebuttal testimony. As in the companion case, Friberg's testimony was introduced to counter statements made by Appellant. It was within the trial court's discretion to admit the testimony for this purpose. We therefore hold that there was no error in its admission.

Affirmed.