STATE of Minnesota, Respondent,

v.

Lawrence Scott DAME, Appellant.

No. C8-02-1597.

Supreme Court of Minnesota.

Oct. 23, 2003.

John M. Stuart, State Public Defender, Davi E. Axelson, Assistant Public Defender, Minneapolis, MN, for Appellant.

Mike Hatch, Attorney General, St. Paul, MN, Robert M.A. Johnson, Anoka County Attorney, Robert D. Goodell, Assistant County Attorney, Anoka, MN, for Respondent.

## OPINION

HANSON, Justice.

Appellant Lawrence Scott Dame was convicted of five counts of murder in the first degree, in violation of Minn.Stat. § 609.185(a)(1) (2002), in connection with the deaths of his sister, Donna Mimbach, her husband, Todd Mimbach, and their three children, Daniel Mimbach, age 22 months; Amber Duval, age 9; and John Mimbach, age 12. On appeal, Dame argues that (1) the district court erred in admitting crime-scene and autopsy photographs during the mental-illness phase of a bifurcated trial, (2) the district court erred by delaying jury deliberations after closing arguments, (3) it was prosecutorial misconduct for the state to question a witness regarding a matter that had been ruled inadmissible by the district court, and (4) the accumulation of these errors deprived him of a fair trial. We affirm.

During the evening of October 18, 2000, Dame took a hammer from the Mimbachs' garage and severely bludgeoned his sister's family to death and then cut four of the victims' throats. Dame pleaded not guilty and not guilty by reason of mental illness. Pursuant to Minn. R.Crim. P. 20.02, the district court properly bifurcated the trial into a guilt phase and a mental-illness phase. During the jury voir dire, Dame waived his right to a jury trial for the guilt phase of the trial and submitted those issues to the court on stipulated facts. The court found that the state had proven the elements for each of the five counts of first-degree murder beyond a reasonable doubt.

The mental-illness phase of the trial was conducted before a jury. The test for the mental-illness defense in Minnesota is:

[T]he person shall not be excused from criminal liability except upon proof that at the time of committing the alleged criminal act the person was laboring under such a defect of reason, from one of these causes, as not to know the nature of the act, or that it was wrong.

Minn.Stat. § 611.026 (2002) (this test is commonly referred to as the "M'Naghten Rule").

Three forensic psychiatrists testified as expert witnesses about Dame's mental status at the time of the crime. Dame's expert testified that Dame suffered from a mental illness he diagnosed as paranoid schizophrenia. He further testified that although Dame knew the nature of his acts, he did not know that his acts were wrong. The state's expert, as well as the court-appointed expert, testified that Dame was not suffering from any mental illness but only from an extreme character or personality disorder, characterized as psychopathy. Each of these two witnesses testified that Dame did know the nature of his acts and that they were wrong and each diagnosed Dame as malingering.[1]

The jury found Dame guilty of five counts of first-degree murder, rejecting Dame's mental-illness defense. Dame does not challenge the district court's instructions to the jury on the mental-illness defense, the legal test for mental illness in Minnesota, or the sufficiency of the evidence to support the jury's verdict. Instead, he only argues that procedural errors deprived him of a fair trial.

## I.

Dame argues that the district court erred in admitting crime-scene and autopsy photographs. Prior to the stipulation of phase one of the trial, the court carefully reviewed each of 78 crime-scene and autopsy photographs offered by the state. Some depicted the victims where they were found in the home, some showed the injuries after the victims had been cleaned for purposes of the autopsy, and some were photographs of x-rays. The court weighed the probative value of each photograph with its potential prejudicial effect and determined that 42 of them would be excluded.

After the commencement of phase two of the trial, the court re-examined the state's offered photographs and again determined admissibility based on their relevancy to the mental-illness defense. Based on this review, the court excluded an additional 12 photographs. When the state's forensic pathologist used diagrams to assist her testimony on the issue of Todd Mimbach's death, the court sustained Dame's objection to the photographs of Todd Mimbach, ruling that the state could introduce either the diagrams or the photographs, but not both. Thus, 7 photographs of Todd Mimbach were excluded. The court ultimately admitted 13 colored photographs and 4 photographs of x-rays.

The photographs selected for admission were presented to the jury as part of the testimony of the state's forensic pathologist. She testified to the condition of the bodies at the crime scene and during autopsy. The photographs were used to supplement her testimony and to demonstrate her conclusions about the cause and manner of death.

---

1. Malingering was defined at trial as "feigning or exaggeration of psychiatric symptoms for secondary gain."

■ Rulings on the admissibility of photographs as evidence are in the broad discretion of the district court and will not be reversed on appeal absent a showing of a clear abuse of discretion. *State v. Stewart,* 643 N.W.2d 281, 292 (Minn.2002). In determining the admissibility of photographs, the district court must consider the relevance of each photograph and must also weigh the probative value of that photograph against its prejudicial effect. Minn. R. Evid. 401, 403.

Clearly, the photographs would have been admissible in the trial of the guilt phase. We have held on numerous occasions that photographs of a crime scene and the victims are important in assisting the trier of fact in determining the elements of the alleged crime.[2] *State v. Lee,* 645 N.W.2d 459, 467–68 (Minn.2002); *State v. Sullivan,* 502 N.W.2d 200, 202 (Minn. 1993); *State v. Jobe,* 486 N.W.2d 407, 416– 17 (Minn.1992). Gruesome photographs are part of the reality of gruesome crimes. *Jobe,* 486 N.W.2d at 417. But we have cautioned that graphic photographic evidence should be carefully monitored by the district court to prevent an undue prejudicial effect on the jury.[3] *Id.*

This case presents a unique issue. Normally, the same jury hears both the guilt phase and the mental-illness phase of a trial, and thus the jury would be exposed to the crime-scene photographs during the guilt phase. Minn. R.Crim. P. 20.02, subd. 6(2). But here the jury did not hear the guilt phase and the question presented is whether the photographs are relevant solely to the mental-illness phase. Only two other jurisdictions have addressed the use of photographs in similar situations.

In *Shepherd v. State,* 547 N.E.2d 839, 841 (Ind.1989), the defendant conceded at trial that he had murdered the victim. The only remaining issue was that of the defendant's mental status. *Id.* The Indiana Supreme Court, noting that the photographs are relevant "as an aid to understanding the pathologist's findings on the cause of death," held that crime-scene photographs were properly admitted by the trial court.[4] *Id.* at 841–42.

In *People v. Galimanis,* 765 P.2d 644, 646 (Colo.Ct.App.1988), the Colorado Court of Appeals held that in a sanity hearing, prior to a hearing on the substantive elements of the crime, graphic photographic and videotape evidence of a decapitation was relevant. Specifically, the court held that the evidence was probative of the defendant's ability to deliberate. *Id.*

---

2. The standard for the admissibility of photographs was set forth in *State v. DeZeler,* 230 Minn. 39, 46–47, 41 N.W.2d 313, 319 (1950):
   Photographs are admissible as competent evidence where they accurately portray anything which it is competent for a witness to describe in words, or where they are helpful as an aid to a verbal description * * * provided they are relevant to some material issue; and they are not rendered inadmissible merely because they vividly bring to jurors the details of a shocking crime or incidentally tend to arouse passion or prejudice.

3. This caution was expressed in *Jobe:*
   While the fact that [the photographs] are horrifying does not make them inadmissible, we want to remind courts and prosecutors of our increasing discomfort with the large numbers of autopsy and crime scene photos being admitted. Given the possible prejudicial effect on the jury of viewing these gruesome scenes, we ask that courts exercise their discretion to ensure that the jury is adequately informed without being overwhelmed.
   *Jobe,* 486 N.W.2d at 417.

4. The mental-illness defense in Indiana differs somewhat from Minnesota since the option of guilty but mentally ill is available in that jurisdiction. *See Shepherd,* 547 N.E.2d at 842.

Dame's argument that the photographs contain no relevant information to Dame's mental status is unpersuasive. Although the photographs are not as probative for determining the mental status of the defendant as they are for determining the elements of first-degree murder, the photographs still retain probative value for the second phase of the trial.[5] The district court correctly determined that circumstantial evidence about a person's behavior, activities, and conduct is helpful to the jury in determining Dame's state of mind at the time of the murders. This court has previously indicated that the jury may view circumstantial evidence that relates to cognition, volition, and capacity to control behavior when determining the defendant's state of mind. *State v. Wilson,* 539 N.W.2d 241, 244 (Minn.1995).

Further, the district court correctly determined that the photographs were relevant to the question of whether Dame knew the nature and consequences of his acts. They show a consistent pattern in the infliction of injuries and illustrated the pathologist's description of the nature and sequence of the injuries.

Dame argues that the district court should have directed the state to use autopsy diagrams, which were less graphic. The district court did require the state to choose between diagrams and photographs. But the district court's function is to look to the relevancy and probative value of the evidence, not to choose one form of evidence over another. Minn. R. Evid. 401, 403.

The district court thoroughly examined each photograph, specifically re-examined each photograph for the mental-illness phase of the trial, and carefully weighed each photograph's probative value against its prejudicial or cumulative effect. Where the court found repetition or non-relevant depictions in a photograph, the court excluded it.

We conclude that the district court did not abuse its discretion in allowing the autopsy and crime-scene photographs to be admitted in the mental-illness phase of the bifurcated trial.

## II.

Dame argues that the court erred in delaying the jury instructions and deliberations after closing arguments were completed. Summation was completed on Friday, May 31, 2002. Due to a commitment of one of the jurors for the weekend, the judge delayed jury instructions and deliberations until the following Monday, June 3, 2002.

The issue of whether a district court has discretion to delay jury deliberations after closing arguments is one of first impression for this court. The court of appeals has determined that a district court's decision regarding the scheduling of the submission of a case to the jury should only be overturned if the court has clearly abused its discretion. *See State v. Stahlberg,* 373 N.W.2d 843, 844 (Minn.App.1985), *rev. denied* (Minn. Oct. 24, 1985). In *Stahlberg,* the court of appeals held that the district court, concerned with submitting the case to the jury late in the day, did not abuse its discretion when it decided to adjourn at 2:30 p.m. and delayed charging the jury until the following day. *Id.*

---

5. "[A] trial court need not determine that the photographs and other visual aids are necessary in order to admit them into evidence. The appropriate test regarding the admissibility of photographs and other visual aids is relevance, in other words, whether the photographs and other visual aids are helpful to the jury." *State v. Walen,* 563 N.W.2d 742, 748 (Minn.1997).

As a general matter, a district court has considerable discretion in controlling procedural aspects of the trial. *State v. Richards,* 495 N.W.2d 187, 197 (Minn.1992); *State v. Burch,* 284 Minn. 300, 315, 170 N.W.2d 543, 553 (1969). "[A] criminal defendant seeking a new trial for an alleged defect in proceedings bears the burden of showing not only that there was a defect but that the defect was prejudicial." *State v. Crandall,* 452 N.W.2d 708, 710 (Minn.App.1990) (citing *State v. Sanders,* 376 N.W.2d 196, 204 (Minn.1985)).

Dame has provided no evidence of actual prejudice, but argues that prejudice should be presumed. We have recognized a presumption of prejudice only in those cases where the district court's procedural choices resulted in a high probability of prejudice to the defendant. For example, in *State v. Costello,* 646 N.W.2d 204, 215 (Minn.2002), we held that allowing jurors to question witnesses was error and was not subject to a harmless-error analysis because it would be impossible to determine the effects of the error. In *Crandall,* the district court inadvertently allowed an alternate jury member to remain with the jury for the initial part of deliberations. 452 N.W.2d at 710. The court of appeals held that this was a clear violation of court procedure and that the contamination of the jury process was a serious error that resulted in a presumption of prejudice. *Id.*

We see no basis for presuming prejudice here. The court's delay of the jury instructions and deliberations did not violate any rule and did not create a high probability of prejudice. Moreover, the court specifically instructed the jurors, at the conclusion of closing arguments and throughout the trial, that they were not to speak with anyone about the case or to come to conclusions on their own. The court reminded the jurors not to do any investigating on their own. We conclude that the district court did not abuse its discretion when delaying jury instructions and deliberations until the following Monday.

III.

Dame argues that the prosecutor committed misconduct by questioning a witness about a topic that had been ruled irrelevant by the district court. After much discussion, the court announced that testimony concerning Dame's medical treatment after his arrest was not relevant to the determination of mental illness at the time of the offense. The court expressed reservations about this ruling, noting that Dame's use or lack of use of mental-health resources could be considered relevant to the issue of feigning a mental illness. The court stated that it was receptive to an offer of proof that evidence of mental-health treatment was relevant to the mental-illness defense.

During the direct examination of the court-appointed forensic psychiatrist, the state asked whether Dame was taking medication after his arrest. Dame objected. The court sustained the objection and the witness was not allowed to answer. After a recess, Dame moved for a mistrial, claiming that the prosecutor's question was misconduct. The court denied that motion.

The state has a duty to see that the defendant receives a fair trial. *State v. Henderson,* 620 N.W.2d 688, 701–02 (Minn. 2001). Granting of a new trial based on prosecutorial misconduct rests within the discretion of the district court. *Id.* at 702. "[The supreme court] will not disturb a district court's conclusion that no misconduct occurred unless the misconduct, viewed in light of the entire record, was so inexcusable, serious, and prejudicial that

the defendant's right to a fair trial was denied." *Id.* at 702.

█ In *Henderson*, we concluded that the prosecutor did not commit misconduct by asking two questions with the intention of eliciting improper and prejudicial evidence, one of which was answered before objection. *Id.* In the present case, the prosecutor asked only one question and the objection to that question was sustained before the witness answered. The prosecutor did not continue that line of questioning. Additionally, the court properly instructed the jury that they were not to consider any questions posed by attorneys that the court did not allow to be answered by the witness.

It is also arguable that the question was not clearly prohibited by the court's earlier ruling. The court discussed this issue with the parties on more than one occasion. Additionally, our review of the record shows that the subject of Dame's medication after the offense had already been opened by Dame's counsel during the direct examination of Dame's expert witness, who confirmed that Dame was not receiving medication at the various times that he interviewed him in the jail. We conclude that the state's single question was not misconduct and, in any event, was not prejudicial. *See Henderson*, 620 N.W.2d at 702.

Affirmed.