*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2405**

State of Minnesota,
Respondent,

vs.

Joseph Gassoway,
Appellant.

**Filed November 10, 2014
Affirmed
Cleary, Chief Judge**

Hennepin County District Court
File No. 27-CR-12-32132

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County
Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Stauber, Presiding Judge; Cleary, Chief Judge; and

Chutich, Judge.

**CLEARY**, Chief Judge

Appellant Joseph Gassoway was charged in Hennepin County District Court with one count of second degree criminal sexual conduct based on an alleged assault on July 5, 2012. A jury found appellant guilty in July 2013, and the district court sentenced him to 36 months to be served consecutively with another sentence. On December 30, 2013, appellant timely filed an appeal to this court challenging the admission of *Spreigl* evidence, the jury instructions, and the district court's in camera review. Because the district court did not abuse its discretion or commit plain error with the jury instructions, we affirm.

## FACTS

Appellant and his girlfriend, F.H., were in a relationship for approximately four years beginning around 2008. In June 2012, appellant and F.H. moved into an apartment in Richfield, Minnesota. F.H. has four children and numerous grandchildren—she would frequently babysit the grandchildren. On July 5, 2012, F.H. went grocery shopping with her daughter and four grandchildren. F.H. returned to her apartment with her grandchildren. At the apartment, appellant began putting away the groceries while F.H. sat in the living room with her grandchildren. One of F.H.'s grandchildren, E.D., went into the kitchen to get something to eat. The events that then took place in the kitchen were disputed at trial.

E.D. testified that appellant came up from behind her when she was bending over to get some food from the refrigerator and "started bumping [her] butt." E.D. said that she turned around and told appellant to stop, at which point he grabbed her hand and put it on his genitals. E.D. left the kitchen and told F.H. what had allegedly happened and text messaged her mother. The text message said that "[Appellant] made me touch his wiener."

Appellant testified that he was putting away groceries and cutting up chicken when E.D. came into the kitchen. Appellant said he accidently kicked E.D. in the buttocks when E.D. snuck in between him and the refrigerator to get a snack. He said this upset E.D., and she turned around and punched him in the genitals. Appellant testified that he grabbed her arm and told her not to hit him.

Two days after the alleged incident in the kitchen, E.D.'s mom received a phone call from her sister. She said that E.D.'s cousins had told her about other alleged instances of sexual assault by appellant. When questioned, E.D. told her mom that appellant had "humped" her.

On July 27, 2012, E.D. was interviewed at CornerHouse, which is a child abuse evaluation center. During this interview, E.D. described two previous occasions when appellant allegedly touched her inappropriately. E.D. stated that appellant had previously "humped" her, which she described as appellant lying on top of her with his clothing on and moving his body up and down so that their genitals rubbed against each other. E.D. also said that appellant had tried to kiss her when she was helping him move things into

3

the Richfield apartment. E.D. stated that "everything happened" after her ninth birthday, on June 25, 2012, which means all three incidents allegedly occurred between June 25 and July 5, 2012. Appellant testified that the two other incidents never occurred.

The district court held a pretrial hearing on two issues: (1) whether to admit *Spreigl* evidence of a similar sexual assault for which appellant had been convicted; and (2) whether to provide appellant with the mental health records of the *Spreigl* witness.

Appellant argued that *Spreigl* evidence should not be admitted because it was not relevant to a common scheme or plan, modus operandi or intent under 404(b). Appellant argued that the incidents were not similar because the alleged touching was different, one involved penetration and one did not, there were different victims, and the assaults occurred in different apartments and rooms. Appellant also argued that the probative value was outweighed by the potential prejudicial effects. The respondent argued the incidents were relevant to establish a common scheme because the victims were the same sex and similar age, the alleged assault in both cases happened in another room while appellant's girlfriend was present, and appellant obtained access to the victims through his girlfriend.

The district court initially took the matter under advisement to research cases cited during the pretrial hearing. The district court said that it could not rule on the *Spreigl* evidence until it heard the strength of the respondent's case and the complainant's testimony. After the complainant and two other witnesses testified, the district court decided to admit the *Spreigl* evidence to establish a common scheme or plan, and to

4

refute appellant's contention that the victim's testimony was a fabrication or a mistaken perception. The district court held that there was "sufficient similarity in circumstances to make the *Spreigl* [evidence] probative," including the fact that in both cases a young girl of the same age was involved and appellant had access to the girls through his association with F.H.

Appellant also argued that the district court should do an in camera review of records concerning the *Spreigl* witness's mental health because of a letter the parties received from the witness's social worker. The district court allowed appellant to subpoena records relating to the witness's mental health and did an in camera review of the records. After review, the district court released some records, sealed some, and issued a protective order.

The *Spreigl* witness testified in-person at trial. She was ten-years-old at the time. The witness said that she lived with her grandmother from June 2010 to 2011, and she would frequently stay overnight with F.H. when her grandmother worked. The witness testified that appellant came into the bedroom when she was alone and had sexual relations with her while they were naked. She also testified that appellant put his mouth on her breasts and put his penis inside her mouth. The *Spreigl* witness was eight and nine-years-old at the time of abuse. The district court gave the jury cautionary instructions before the *Spreigl* witness testified and at the end of trial.

Appellant also testified at trial, which led to arguments over proper impeachment. The parties discussed whether the respondent could use appellant's felony conviction for

criminal sexual conduct in the first degree in its case-in-chief or as rebuttal evidence. The district court did not allow the conviction to come in during the respondent's case-in-chief. The district court held that the conviction could be admitted in three scenarios: (1) if there was impeachment of the *Spreigl* witness; (2) if appellant testified that he would never assault a child; or (3) if he insinuated that he would not let children in his room. The district court said that if appellant testified that he had not assaulted the *Spreigl* witness, then the felony conviction could be used as rebuttal evidence.

During his testimony, appellant testified that he did not "like kids in my bedroom," and that he does not "put [his] hands on anybody else." On cross-examination, appellant also denied ever being alone in a bedroom with the *Spreigl* witness or ever being alone with other children in his bedroom with one exception. As a result of this testimony, the district court permitted rebuttal through the specific mention of the felony criminal sexual conduct in the first degree. The district court gave cautionary instructions about the rebuttal evidence.

## D E C I S I O N

### I. The district court did not abuse its discretion by admitting *Spreigl* evidence

Appellant argues that evidence of other bad acts was inadmissible because it was irrelevant to intent, and even if it were relevant, it was not markedly similar to the charged offense. Respondent argues that it was admissible to refute a claim of victim fabrication or mistaken perception, and that the other bad act was markedly similar to the charged offense.

6

Evidence of other crimes or bad acts is characterized as "*Spreigl* evidence" after the supreme court's decision in *State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965). The admissibility of *Spreigl* evidence lies within the sound discretion of the district court and will not be reversed absent a clear abuse of discretion. *State v. Spaeth*, 552 N.W.2d 187, 193 (Minn. 1996). If the district court erred in admitting evidence, the reviewing court determines "whether there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict." *State v. Post*, 512 N.W.2d 99, 102 n.2 (Minn. 1994).

"Evidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith." Minn. R. Evid. 404(b). But 404(b) has an exclusionary rule whereby such evidence is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id. Spreigl* evidence may also be admitted to show the conduct on which the charge was based actually occurred or to refute arguments that it was "a fabrication or a mistake in perception by the victim." *State v. Wermerskirchen*, 497 N.W.2d 235, 242 (Minn. 1993).

District courts follow a five-prong test in determining the admissibility of other bad act evidence:

> (1) the state must give notice of its intent to admit the evidence; (2) the state must clearly indicate what the evidence will be offered to prove; (3) there must be clear and convincing evidence that the defendant participated in the prior act; (4) the evidence must be relevant and material to the

7

> state's case; and (5) the probative value of the evidence must not be outweighed by its potential prejudice to the defendant.

*Angus v. State*, 695 N.W.2d 109, 119 (Minn. 2005). If the admission of evidence of other crimes or misconduct is a close call, it should be excluded. *State v. Bolte*, 530 N.W.2d 191, 197 (Minn. 1995). Here, the first three prongs are uncontested.

**A.     The evidence is relevant and material to the respondent's case because the two crimes are markedly similar**

The first issue is whether the district court abused its discretion by finding that the *Spreigl* evidence is relevant and material to refute appellant's assertions of fabrication or mistaken perception. If used to demonstrate that there is a common scheme or plan, the conduct of the prior act and the charged act "must have a marked similarity in modus operandi to the charged offense." *State v. Ness*, 707 N.W.2d 676, 688 (Minn. 2006). The court should focus on the closeness of the relationship between the other crime and the charged crime in terms of time, place, and modus operandi. *Wermerskirchen*, 497 N.W.2d at 240.

The district court in this case held that the two acts were substantially similar because appellant targeted young girls of similar ages (eight or nine-years-old at the time of alleged assault), and he had access to those girls through his association with F.H. The assaults also allegedly took place within one to two years of each other. The nature and location of the alleged assaults were different, but the two assaults do not need to be identical. *See State v. Kennedy*, 585 N.W.2d 385, 391 (Minn. 1998) (stating that the "*Spreigl* evidence need not be identical in every way to the charged crime"). Based on

the closeness in time of the two assaults, the age of the victims, and appellant's access to the victims through F.H., the district court did not abuse its discretion by finding the acts were "markedly similar." *See State v. Cichon*, 458 N.W.2d 730, 734 (Minn. App. 1990) (finding that *Spreigl* evidence was substantially similar in part because accused "used a position of authority and as a caretaker to commit both offenses"); *Wermerskirchen*, 497 N.W.2d at 242 (holding that acts were highly relevant because they showed "an ongoing pattern of opportunistic fondling of young girls within the family context").

Appellant relies on *Ness* to argue that the two alleged assaults were not markedly similar. In *Ness*, a teacher at a community education painting class allegedly touched an 11-year-old boy inappropriately. *Ness*, 707 N.W.2d at 679-80. The district court admitted *Spreigl* evidence from an incident that allegedly occurred 35 years earlier when the defendant was a school principal. *Id.* at 683, 688. The supreme court held that the district court erred by admitting the *Spreigl* evidence, based partly on the time difference between the alleged assaults (35 years) and partly on the diminished probative value of the *Spreigl* evidence because of the strength of the state's case, including rare eye-witness testimony. *Id.* at 688-91. Given the strength of the case, the supreme court held that the probative value was outweighed by the "potential for the evidence to persuade by improper means." *Id.* at 691.

Appellant misinterprets the holding of *Ness*:

> Despite the fact that the victims were both male and of the same general age, and that the touching occurred opportunistically in the discharge of Ness's role as an educator, the Minnesota Supreme Court nevertheless held that

9

these incidents were not so markedly similar that they justified the admission of the prior-acts evidence.

As the above discussion indicates, the holding in Ness was based more on the 35 year difference between the alleged assaults with no other accusations in the intervening years, and the limited probative value of the evidence given the strength of the state's case. *Id.* at 688-91. In contrast to *Ness*, the two alleged assaults here occurred within one or two years of each other. Additionally, there is no corroborating testimony like there was in *Ness*, which makes the need for the evidence greater, and thereby increases the probative value of the *Spreigl* evidence.

**B.      The probative value of the evidence is not outweighed by the potential for unfair prejudice to appellant**

This court must next consider if the district court abused its discretion by finding that the probative value of the *Spreigl* evidence to the disputed issue is not outweighed by the potential for unfair prejudice to appellant. Although unfair prejudice is essentially inherent with the use of *Spreigl* evidence in sexual abuse cases, the district court can give cautionary instructions concerning the proper and limited role of the evidence to mitigate the prejudice. *State v. Bartylla*, 755 N.W.2d 8, 22 (Minn. 2008). The respondent's need for other-acts evidence should be addressed in balancing the probative value of the evidence against its potential for unfair prejudice. *Ness*, 707 N.W.2d at 690.

The district court gave cautionary instructions before the *Spreigl* witness testified and during the jury instructions. The district court's instructions mitigated the potential for prejudice. *Bartylla*, 755 N.W.2d at 22. Additionally, the respondent's case was based

10

principally on uncorroborated child testimony. The lack of corroboration or other physical evidence suggests that *Spreigl* evidence establishing a modus operandi and refuting appellant's allegation of mistaken perception is probative. *See State v. Fardan*, 773 N.W.2d 303, 319 (Minn. 2009) (holding *Spreigl* evidence admissible in part because of state's weak case). Appellant argues that the weakness of the respondent's case means that the *Spreigl* evidence should not be admitted; however, that statement is contrary to Minnesota law. *See Ness*, 707 N.W.2d at 690 (stating that the need for the *Spreigl* evidence is a major factor for the court to consider in determining the probative value of the evidence).

The district court did not abuse its discretion by admitting the *Spreigl* evidence because it gave cautionary instructions and determined that there was a need for the evidence based on the respondent's weak case, which increased its probative value.

## II.     The district court did not commit plain error affecting a substantial right

Appellant argues the jury did not know which "act" to convict appellant of to satisfy the sexual contact requirement of criminal sexual conduct in the second degree. Appellant concedes that it did not object to the jury instructions, but argues this court can review for plain error in the absence of an objection. Respondent argues that appellant was only charged for one act, and the jury convicted him for that act.

In the absence of objection to jury instructions, this court has discretion to review the issue if it is plain error affecting substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). Before an appellate court reviews an unobjected-to error, there must be (1) error, (2) that is plain, and (3) the error must affect substantial rights. *Id*. If those

11

three prongs are met, the court will consider whether it should address the error to ensure the integrity of the judicial proceedings. *Id.*

"[T]he jury must unanimously agree on which acts the defendant committed if each act itself constitutes an element of the crime." *State v. Stempf*, 627 N.W.2d 352, 355 (Minn. App. 2001). Under Minn. Stat. § 609.343, subd. 1(a) (2012), a person has committed second degree criminal sexual conduct if they engaged in "sexual contact" with someone under the age of 13. Sexual contact is the intentional touching by the actor of the complainant's intimate parts or the touching of the clothing covering the immediate area of the intimate parts. Minn. Stat. § 609.341, subd. 11(a) (2012). Intimate parts include the "primary genital area, groin, inner thigh, buttocks, or breast of a human being." *Id.*, subd. 5 (2012). Appellant argues that the jury could have convicted him for one of two acts constituting sexual contact: the events that took place in the kitchen on July 5, or the alleged humping incident that occurred before July 5.

Appellant's arguments are undermined by the facts in the record. The jury instructions specifically said that appellant's act "took place on or about July 5, 2012, in Hennepin County." The verdict form signed by the foreperson states that appellant was found guilty of criminal sexual conduct in the second degree for acts that "occurred on or about July 5, 2012, in Hennepin County, Minnesota." The only act in question from July 5, 2012, was the alleged sexual assault in the kitchen.

In addition to the instructions from the court, the parties clearly referenced the July 5 act in their closing statements. Appellant's attorneys said that "as of July 5 it's he

12

said/she said versus a six year old then and [appellant] about whether he bumped into her." The respondent argued in its rebuttal that it was criminal sexual conduct in the second degree "[w]hen the defendant went up behind [E.D.] in that kitchen on July 5, 2012, when she was bent over and [he] bumped and grinded his genitals against her buttock," and when appellant allegedly put her hand "on his genitals."

Appellant correctly points out that evidence was presented at trial that he had committed other sexual acts that might constitute criminal sexual conduct in the second degree—specifically, the humping incident that occurred before July 5. However, appellant was not charged with that act in the complaint or the jury instructions. The humping incident was *Spreigl* evidence, and the district court made it clear the only act for which he was on trial was from July 5, 2012. Thus, there was no error in the jury instruction because the respondent charged appellant with the July 5 act, and the respondent asked the jury to convict appellant of that act. *See Stempf*, 627 N.W.2d at 356 (requiring the "prosecution to elect the act upon which it will rely for conviction").

Appellant relies on *State v. Stempf* to contend that the district court committed plain error, but that reliance is misplaced. In *Stempf*, the defendant was convicted of violating a controlled-substance crime statute. *Id.* at 357. The state presented evidence for two different acts of illegal possession and told the jury that it could convict as long as the jurors found the defendant guilty of at least one of the acts. *Id.* at 357-58. The trial court refused to issue an instruction informing the jury to evaluate the acts separately and to reach a verdict on each act. *Id.* Since different jurors could have convicted the

13

defendant for different acts, there might not have been a unanimous verdict and the court reversed. *Id.* at 358. In contrast to *Stempf*, the district court here informed the jury that it must unanimously agree that appellant was guilty of the act that allegedly took place on July 5, 2012. The district court therefore did not commit plain error affecting a substantial right.

**III. The district court's admission of other crimes evidence as rebuttal to appellant's testimony was not a clear abuse of discretion**

Appellant argues that the district court erred by permitting the respondent to question him about his felony conviction as rebuttal evidence and that the admission was improper under Rule 404(b) or 609. Respondent argues that the district court did not abuse its discretion in admitting proper rebuttal evidence.

Proper rebuttal evidence may include evidence that might not otherwise be admissible, and the district court's determination "of whether or not something is appropriate rebuttal evidence rests within the discretion of the trial court and will only be reversed upon a showing of a clear abuse of discretion." *State v. Gutierrez*, 667 N.W.2d 426, 435 (Minn. 2003). Rebuttal evidence is that which "explains, contradicts, or refutes the defendant's evidence." *State v. Swanson*, 498 N.W.2d 435, 440 (Minn. 1993). Other crimes evidence can be admitted as rebuttal evidence, instead of as *Spreigl* evidence. *State v. Sullivan*, 502 N.W.2d 200, 203 (Minn. 1993).

Prior to appellant's testimony, the district court heard arguments regarding the admissibility of appellant's felony conviction as rebuttal evidence. The district court ruled the named-felony conviction would be admitted if appellant said that he had not

14

been alone with the *Spreigl* witness in his bedroom. Appellant testified on direct examination that he does not "even like kids in [his] bedroom" and that he does not "put [his] hands on anybody else." On cross-examination, appellant testified that he had not been alone in a bedroom with the *Spreigl* witness. Based on this testimony, the district court permitted the respondent to cross-examine appellant about his felony conviction for criminal sexual conduct in the first degree. The district court did not abuse its discretion by allowing the named-felony conviction to be used as rebuttal evidence because the conviction tended to rebut appellant's claims that he had not abused the *Spreigl* witness, did not like kids in his bedroom, and did not put his hands on other people. *See Sullivan*, 502 N.W.2d at 203 (admitting *Spreigl* evidence as proper rebuttal evidence).

Appellant also argues that evidence of the specific felony offense was inadmissible under Rules 404(b) and 609. However, the district court admitted evidence of the conviction as rebuttal, and it did not consider 404(b) or 609 arguments when making that ruling. Because the district court did not base its ruling on 404(b) or 609, appellant's arguments on those grounds are outside the scope of review and this court need not consider them. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that an appellate court will not consider matters not argued to and considered by the district court).

## IV. The district court did not abuse its discretion in its in camera review of the *Spreigl* witness's mental health records

Appellant asked the district court to conduct an in camera review of documents concerning the *Spreigl* witness's mental health to determine whether they contained

15

information relevant to the witness's ability to remember or recall events. Appellant made a showing for the in camera review based on a letter from the witness's social worker. The district court conducted an in camera review, disclosed some information to counsel, and issued a protective order for the remaining records.

The district court's in camera review of confidential records, "like any other determination by the trial court, is subject ultimately to judicial review." *State v. Paradee*, 403 N.W.2d 640, 642 (Minn. 1987). This court reviews the limits placed by the district court on the release and use of protected records for an abuse of discretion. *State v. Hokanson*, 821 N.W.2d 340, 349 (Minn. 2012). This court reviewed the documents and concludes that the district court did not abuse its discretion.

**Affirmed.**